**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND**
**(NORTHERN DIVISION)**

JESUS NEHEMIAS MONTANO GUILLEN,

*Plaintiff*,

v.

ARMOUR HOME IMPROVEMENT, INC., *et al*.,

*Defendants*.

Civil Action No.: 1:19-cv-02317-DLB

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ATTORNEY'S FEES AND COSTS**

**TABLE OF CONTENTS**

INTRODUCTION 2

ARGUMENT 4

I. GOVERNING LEGAL PRINCIPALS AND PREVAILING PARTY STATUS 4

II. PLAINTIFF'S COUNSEL'S RATES 5

II. INITIAL LODESTAR – THE HOURS EXPENDED BY PLAINTIFF ARE REASONABLE 12

III. THE PLAINTIFF IS ENTITLED TO HIS REASONABLE COSTS 31

CONCLUSION 33

**INDEX OF EXHIBITS**

| | |
|---|---|
| Exhibit A | Melehy & Associates LLC's contemporaneous billing records |
| Exhibit B | Declaration of Omar Vincent Melehy |
| Exhibit C | Declaration of Joe Espo |
| Exhibit D | Retainer Agreement |
| Exhibit E | Declaration of Michal Shinar |
| Exhibit F | E. Wilson Declaration |
| Exhibit G | Adjusted Appendix B Spreadsheet |
| Exhibit H | 2021 Wolters Klowers Real Rate Report |
| Exhibit I | Spreadsheet of All Costs Incurred with Backups |
| Exhibit J | Legal Services Index Matrix – 2022-2023 |
| Exhibit K | Freeman Declaration |
| Exhibit L | S. Melehy Declaration |
| Exhibit M | Compilation of Discovery Dispute Letters |
| Exhibit N | Fitzpatrick Matrix |
| Exhibit O | Balashov Declaration |

## INTRODUCTION

Plaintiff, Jesus Guillen ("Plaintiff"), sued his former employers seeking unpaid straight-time, minimum wages and overtime wages under the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201, *et seq.*; the Maryland Wage and Hour Law ("MWHL"), Labor & Empl. Art. §§ 3-415 and 3-427, the Maryland Wage Payment and Collection Law ("MWPCL"), Labor & Empl. Art., §§ 3-505 and 3-507.2. *See* ECF No. 1 as amended at ECF No. 33. Defendants vigorously and vexatiously litigated this case for over three years, insisting in the face of overwhelming evidence, that Plaintiff was an independent contractor, and not their employee. After a 4-day bench trial, the Court held Plaintiff was Defendants' employee and awarded him $8,777.02, in unpaid wages and liquidated damages. ECF No. 108. Plaintiff acknowledges he recovered 17% of the damages sought at trial and did not establish Defendant C. Stouffer was liable as his employer. *See* ECF No. 107. Plaintiff has accounted for this partial lack of success by making the following reductions:

| | |
|---|---|
| Initial Lodestar | $385,434.75 |
| Reductions to individual time entries | (-$30,298.50) |
| Categorical reductions | (-$29,954.50) |
| Global reduction of 30% | (-$97,554.68) |
| Total attorneys' fees sought | $227,627.58 |

Plaintiff seeks attorneys' fees for two partners, one associate attorney, 4 paralegals, who worked on this case over the last 4 years. Plaintiff seeks attorneys' fees at Melehy & Associates LLC's (hereinafter the "Firm" or "M&A") normal and customary rates, which are below the prevailing market rates in this District. In support, Plaintiff states as follows:

## ARGUMENT

### I. GOVERNING LEGAL PRINCIPALS AND PREVAILING PARTY STATUS

Under the FLSA, a successful plaintiff is entitled to recover his "reasonable attorney's fee[,]" as well as "costs of the action[,]" against a defendant. 29 U.S.C. § 216(b). Plaintiff prevailed

at trial on his FLSA claims and obtained liquidated damages. ECF Nos. 107, 108. Accordingly, Plaintiff is a prevailing party entitled to an award of reasonable attorneys' fees and costs.

The Fourth Circuit utilizes the three-step "Lodestar Analysis" to calculate the appropriate award of attorneys' fees. *Grissom v. The Mills Corp.*, 549 F.3d 313, 320–21 (4th Cir. 2008). Step one requires the Court to arrive at the initial lodestar amount, by multiplying the "reasonable hourly rate," by a "reasonable number of hours expended." *Id*. A "strong presumption" exists that the lodestar is a reasonable fee and this presumption is overcome only "'in those rare circumstances where the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee.'" *McAfee v. Boczar*, 738 F.3d 81, 88-89 (4th Cir. 2013), as amended (Jan. 23, 2014) (quoting *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 554 (2010)). When arriving at the initial Lodestar, the Court's analysis is guided by twelve factors set forth in *Johnson v. Georgia Highway Express, Inc*., 488 F.2d 714, 717-19 (5th Cir. 1974) (the "*Johnson* Factors"). 738 F.3d at 88.

## II. PLAINTIFF'S COUNSEL'S RATES

### A. M&A IS ENTITLED TO CURRENT MARKET RATES.

A prevailing plaintiff in fee-shifting litigation is entitled to attorney's fees at "prevailing market rates in the relevant community." *Blum v. Stenson*, 465 U.S. 886, 895 (1984). "A reasonable attorney's fee is one that is adequate to attract competent counsel, but . . . [that does] not produce windfalls to attorneys." *Blum*, 465 U.S. at 895.

Because M&A began representing Plaintiff in August 2019, and to date, has not received any payment for services, O. Melehy Decl. ¶ 30, Ex. B, current market rates must be awarded to

compensate for the time value of money,[1] *Missouri v. Jenkins*, 491 U.S. 274, 283 (1989). "'[C]ourts have regularly recognized the delay factor, either by basing the award on current rates or by adjusting the fee based on historical rates to reflect its present value.'" *Id*. at 282 (quoting *Pennsylvania v. Delaware Valley Citizens' Council*, 483 U.S. 711, 716 (1987)). *See also Perdue v. Kenny A*., 559 U.S. at 556 (same). The most practical course for the Court to follow is to award current market rates rather than to adjust historic rates (which may have changed several times) to present value. Awarding compensation at current rates "roughly approximate[s] periodic compensation adjusted for inflation and interest and ... obviate[s] the necessity of guessing when periodic billings would have been made and paid in an analogous private practice situation." *Ramos v. Lamm*, 713 F.2d 546, 555 (10th Cir. 1983) (disapproved on other grounds, *Pennsylvania v. Delaware Valley Citizens' Council*, 483 U.S. at 171 n.4).

Therefore, the Court should award Plaintiff current market rates.

**B. THE RATES SOUGHT BY PLAINTIFF ARE AT OR BELOW CURRENT MARKET RATES IN BALTIMORE FOR EMPLOYMENT LAWYERS.**[2]

This Court has frequently awarded rates set forth in Appendix B of the Local Rules of this Court, but it has sometimes departed from it.[3] However, Appendix B is meant only to provide

---

[1] In *Johannssen v. District No. 1-Pacific Coast Dist, MEBA Pension Plan*, 292 F.3d 159 (4th Cir. 2002) the time that had elapsed between the filing of the law suit and the trial court's fee award was five years. *Id*. at 167. The trial court declined to award the prevailing party current market rates and the Fourth Circuit reversed. *Id.* at 180. It noted that "consideration of the effect on the value of the fee is mandatory as part of a consideration of what is reasonably compensatory." *Id*.

[2] A party may support his entitlement to the attorney's fees sought by introducing affidavits from other attorneys attesting to the reasonableness of the hourly rates or the prevailing market rates. *See Beyond Sys., Inc. v. World Ave. USA, LLC*, No. PJM-08-921, 2011 WL 3419565 at *3 (D. Md. Aug. 1, 2011).

[3] *See e.g. Duvall v. O'Malley, No*. No.: ELH-94-2541, 2016 WL 3523682, at *14 (D. Md. June 28, 2016).

"practical guidance to lawyers and judges when requesting, challenging and awarding fees." Appendix B (3), n.6. If there is "an increase in the cost of legal services since the adoption of the guidelines", that would justify higher rates. *Id*.

There are several reasons why Appendix B does not reflect current market rates for employment attorneys in Baltimore or in Maryland generally. First, it was last updated on July 1, 2014, which is more than nine years ago. *See Morataya v. Nancy's Kitchen of Silver Spring, Inc*., GJH-13-01888, 2016 WL 6634856, at *3 n.2 (D. Md. 2016). Since that time, there has been inflation and hourly rates have substantially increased. In addition, the schedule does not adequately account for experience at or above 20 years, which has significant value in the marketplace. The Fitzpatrick Matrix compiled by the United States Attorney's Office, includes brackets for less than one year of experience to 35 years of experience, which reflects the realities of the marketplace. *See* Fitzpatrick Matrix, Ex. N.

The rates sought by Plaintiff, for the M&A staff who worked on this case, are as follows:

| | | |
|---|---|---|
| Omar Vincent Melehy | (36 years of experience): | $625 per hour; |
| Suvita Melehy: | (27 years of experience): | $575 per hour; |
| Andrew Balashov: | (7 years of experience): | $350 per hour; |
| Law Clerks and Paralegals: | | $180 per hour. |

M&A is a firm located in Montgomery County Maryland and the foregoing hourly rates are its normal and customary rates and those currently charged to paying clients. *See* Ex. B ¶ 29. Over the last 2 years, M&A has had an estimated 10 fee-paying clients who it billed on an hourly basis at M&A's normal and customary rates. *Id*. The Fourth Circuit has held that the rate charged by an attorney to fee-paying clients is a presumptively reasonable hourly rate for that attorney. *Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 175 (4th Cir. 1994).

M&A's normal and customary rates are consistent with current market rates for attorneys practicing employment law in Baltimore. In July 2021, Joseph Espo, a partner at Brown Goldstein

& Levy, LLP ("BGL") in Baltimore provided an opinion in *Carrrera v. EMD Sales Inc.*, No. JKB-17-3066 (D. Md. Northern Division) about market rates for attorneys with similar experience for litigation in fields that include employment law. Decl. of Joe Espo, Ex. C. According to Mr. Espo, two years ago, his firm charged an hourly rate of $625 per hour for partners with comparable experience to Mr. Melehy (then 34 years), between $525 and $595 per hour for attorneys with comparable experience to Ms. Melehy (then 26 years), and $360 per hour for attorneys with comparable experience to Mr. Balashov (then 5 years). *Id.* ¶¶ 1, 4-5. BGL's rates are reflective of market rates in July 2021 because the firm reviews and considers rates charged by other firms and attorneys in Maryland when it sets its rates. *Id.* ¶ 6. Additionally, Mr. Espo opined that both BGL's rates and the rates sought by M&A in the *Carrera* case (which are the same rates sought here) are at or below market rates for attorneys in Baltimore that practice employment law. *Id.* ¶¶ 6, 9.

Andrew Freeman, also a partner at BGL, also submitted a declaration in support of M&A's request for attorneys' fees and costs in the *Carrera, et al. v. EMD Sales, Inc., et a*l. (Case No. 17-3066) and testified that in 2021, the hourly rate for someone of Andrew Balashov's experience is $390 per hour. Freeman Decl. ¶ 10, Ex. K.[4] In addition, BGL would then have charged $290 per hour for attorneys who graduated in 2020 and have less than one year of experience assuming that they were admitted to the bar in December of 2020. *Id.* For attorneys who graduated in 2019 and were presumably admitted to the bar in December 2019, BGL charged between $300 and $350 per hour. *Id.* This demonstrates that Mr. Balashov's rate of $350 per hour (considering his 7 full years of experience), is well below the market rate for attorneys with comparable experience.

[4] Mr. Freeman, who is also a partner at BGL and whose declaration Plaintiff relies upon (*see* Ex. K) pointed out that there is an error in Mr. Espo's declaration in that it states that someone of Mr. Balashov's experience would be billed at $360.00 per hour, when in fact the then prevailing rate was $390.00 per hour. *Id.*

The rates sought by M&A are also supported by Michal Shinar, Senior Counsel at Joseph Greenwald and Laake, a firm located in Greenbelt, Maryland. Ms. Shinar practices employment law and she opined that the rates being sought in this case by the Firm "are at or below prevailing market rates in the locality where this action is pending, which is the Northern Division of the Maryland District Court located in Baltimore City, Maryland." Shinar Decl. ¶¶ 9, 12, Ex. E. Moreover, she opined that the rates charged by M&A are consistent with those charged to fee paying clients. *Id*. ¶ 13.

Furthermore, the rates sought by Plaintiff are far less than those charged by larger firms practicing employment law in the Baltimore area. For example, Littler Mendelson, P.C., a well-known employment law firm, applied for fees and costs incurred in a Bankruptcy case in November 2020 in the Southern Division (Greenbelt). *See* Final Application, *In re: Creative Hairdressers, Inc*., *et al*., Case No. 20-14583, ECF No. 778. Littler was hired by the debtors as "Special Employment Counsel" and its role in the bankruptcy case was "solely with respect to labor and employment issues." *Id*. at 3. The rates applied for by Littler, as employment counsel, were as follows:

| | | |
|---|---|---|
| Bruce R. Millman | (then 47 years of experience) | $830 per hour; |
| Steven J. Friedman | (then 35 years of experience) | $850 per hour; |
| Robert C. Long | (then 41 years of experience) | $840 per hour; |
| Shawn M. Clark | (then 8 years of experience)[5] | $470 per hour. |

*Id*. at 6. Littler represented to the Court that those rates "are the normal and customary rates charged . . . for its services to debtors, trustees and committees in other bankruptcy cases ***and to clients in matters not involving bankruptcy in the Baltimore area."*** *Id*. at 11 (Emphasis supplied). And the Bankruptcy Court approved them on December 22, 2020. *Id*. ECF No. 793. Moreover,

[5] These dates were obtained from Littler's website: www.littler.com.

the 2021 Wolters Kluwer survey of law firm rates shows that average rates for attorneys practicing labor and employment law in Baltimore in 2021 were $645 for partners and $514 for associates. Walters Kluwer Real Rate Report, Ex. H. Those rates are higher than M&A's rates.

The rates Plaintiff seeks are below current market rates for Baltimore employment lawyers and therefore, those rates should be awarded to Plaintiff's counsel.

**C. APPENDIX B RATES ARE NOT MARKET RATES BECAUSE THEY HAVE NOT BEEN UPDATED IN NINE YEARS AND THE 20-PLUS YEARS BRACKET DOES NOT ACCURATELY REFLECT MARKET RATES FOR ATTORNEY'S WITH MORE YEARS OF EXPERIENCE**

Appendix B rates must therefore be adjusted to reflect current market rates. A recognized method for doing so is to apply the Legal Services Index ("LSI"). The LSI is part of the Consumer Price Index ("CPI") and the data is contained on the Bureau of Labor and Statistics ("BLS") web site. Wilson Decl. ¶¶ 1, 2, Ex. F. And Courts utilize the LSI to update fee schedules. *See Interfaith Community Organization v. Honeywell Intern., Inc*., 726 F.3d 403, 415 (3d Cir. 2013) (Approving application of the LSI in updating the Laffey Matrix to reflect current rates). In *Sullivan v. Sullivan*, 958 F.2d 574 (4th Cir. 1992), the Fourth Circuit was faced with the question of whether to bring the Equal Access to Justice ("EAJA") Fee Schedule current by utilizing either the general CPI (cost of living) or the LSI (cost of legal services). *Id*. at 575. The Court held the EAJA, by its restrictive language, permitted increases only based on the general CPI and it directed the trial court to utilize that methodology. *Id*. at 578. However, the Court noted that the use of the LSI would have yielded the "prevailing market rates," which was not the intent of Congress when it enacted the EAJA. *Id*. at 577-78.

Even the Local Rules for the United States Bankruptcy Court for the District of Maryland contain a provision which provides for the ***automatic adjustment*** of the presumptively reasonable rates that practitioners can charge for certain bankruptcy cases. *See* Local Rules for the Maryland

Bankruptcy Court, Ver. 16.1 (August 1, 2016), Appendix F. That provision states that the presumptively reasonable fee shall be updated beginning April 1, 2016, and every three years thereafter, based on the increase in the Consumer Price Index for All Urban Consumers. *Id*. Appendix B contains no analogous provision to adjust the rates for inflation.

If the Appendix B rates are adjusted using the LSI, the resulting rates (hereinafter referred to as the "Adjusted Appendix B rates") are as follows:

| **Appendix B Category** | **Current Appendix B Rates** | **Rate Adjustment Based on LSI** |
|---|---|---|
| Lawyers admitted to the bar for less than 5 years | $150-225 | $191.50/$287.25 |
| Lawyers admitted to the bar for 5-8 years | $165-$300 | $210.65/$383.00 |
| Lawyers admitted to the bar for 9-14 years | $225-$350 | $287.25/$446.84 |
| Lawyers admitted to the bar for 15-19 years | $275-$425 | $351.09/$542.59 |
| Lawyers admitted to the bar for 20 or more years | $300-$475 | $383.00/$606.42 |
| Paralegals and Law Clerks | $95-$150 | $121.28/$191.50 |

*See* Wilson Decl. ¶¶ 4, Ex. F; LSI Adjustments to Appendix B, Ex. G.

Moreover, Appendix B's 20-plus years bracket underestimates market rates for attorneys with more than 25 years of experience. After the adjustments, the rates sought by Mr. Balashov (7 years), Ms. Melehy (27 years) and M&A's Law Clerks and paralegals all fall within the adjusted Appendix B rates. Mr. Melehy's rate (at 36 years of experience) does not. This is the result of the one size-fits-all 20 plus years bracket. The other brackets involve 3-5-year time spans, but the final 20-year-plus bracket encompasses anywhere from 20 to 50 years of experience. The problem with the 20-year bracket is that attorneys with 25 or more years of experience have higher rates than the top adjusted Appendix B rate. For example, from 2015 to the present, rates at BGL for attorneys with comparable experience to Mr. Melehy were $575 per hour in 2015 and rose to $625 per hour in 2021. Ex. C ¶ 7. Mr. Freeman of BGL also opines that "local firms commonly continue to increase the hourly rates they charge for attorneys with more than 20 years of experience" because

they "continue to become more knowledgeable, more efficient, and more desirable to clients, at least up to 30 years into their careers." Ex. K ¶ 20.

Therefore, the rates sought by Plaintiff in this case are reasonable.

## II. INITIAL LODESTAR – THE HOURS EXPENDED BY PLAINTIFF ARE REASONABLE

### A. VOLUNTARY REDUCTIONS BASED ON BILLING JUDGMENT.

M&A eliminated time for 11 timekeepers (10 support staff and one associate attorney). Balashov Decl., Ex. O. This time has a value of approximately $45,000.00. *Id*. M&A then reviewed each time entry and no charged entries that were duplicative, redundant, entered in the wrong case, unnecessary, or for time spent pursuing motions or claims which were completely unsuccessful. *Id*. M&A also no-charged time where two or more attorneys attended a hearing (except for the pre-trial hearing and trial) or met with one another. *Id*. In those instances, M&A only seeks time for the senior attorney. *Id*. M&A then made percentage reductions to certain categories of work to account for the large number of hours spent on some aspects of the case. *Id*. *Id*. Finally, Plaintiff's counsel applied a 30% across-the-board reduction to account for the degree of success. *Id*. Ex. A.

Therefore, not including the fees associated with the 11 eliminated timekeepers, Plaintiff has reduced his attorney's fees by $157,807.17. Ex. A.

### B. AN ACROSS-THE-BOARD REDUCTION OF NO MORE THAN 30% IS WARRANTED FOR PLAINTIFF'S LACK OF SUCCESS

At trial, Plaintiff sought damages of $51,320.62 but received a total of $8,777.02 (17% of the amount sought), he also did not obtain a liability finding as to C. Stouffer. Plt.'s Ex. ID4; ECF No. 107. This warrants no more than a 30% reduction of the lodestar.

The first question is whether Plaintiff prevailed on all claims and if the answer is yes (as it is here), then the Court must evaluate the degree of success, *Hensley v. Eckerhart*, 461 U.S. 424,

434-35 (1983), which means "'compar[ing] the amount of damages sought to the amount awarded,'" *McAfee v. Boczar*, 738 F.3d at 92-93 (quoting *Mercer v. Duke Univ*., 401 F.3d 199, 204 (4th Cir. 2005)) along with the public benefit advanced by the case, *see City of Riverside v. Rivera*, 477 U.S. 561, 575 (1986). The Court may also consider, in making its fee award, that Defendants tenaciously litigated this case through trial, and put Plaintiff to his burdens of proof, including overcoming the independent contractor defense. *See Butler v. Directsat USA, LLC*, Civil Action No. DKC 10-2747, 2016 U.S. Dist. LEXIS 35632, at *20 (D. Md. 2016).

In this case, a 30% reduction is appropriate. For example, in *Butler*, the plaintiffs recovered (through a settlement) approximately 12% of the original amount sought ($36,000 versus $300,644.94). In considering a reasonable reduction for lack of success, the Court noted that Defendants litigated the case vexatiously, which weighed against a large reduction. *Id*. Ultimately, the Court applied a 33% (one-third) reduction based on lack of success. Here, in addition to a monetary recovery, Plaintiff obtained a decision at trial which has ramifications beyond this case and will serve to further the rights of other workers who have been misclassified as independent contractors by their employers. *See* ECF No. 107 (at 23-27) (analyzing the factors in *Schultz v. Capital Int'l Sec., Inc*., to decide Mr. Guillen was not an independent contractor). The Court also made findings regarding what an employer must show to establish the good faith defense under the FLSA which favored Guillen. ECF No. 107 at 37 (finding no good faith). Thus, the Court should consider this as part of the recovery Plaintiff obtained.

Similarly, in *McNeil v. Faneuil, Inc*., No. 4:15cv81, 2017 U.S. Dist. LEXIS 219550, at *46 (E.D. Va. Nov. 8, 2017), the Plaintiffs recovered (through settlement) approximately 17% of the total amount sought ($285,000 versus $1,696,060.66). The Court only applied a 10% discount to account for a lack of success. *Id*. In this case, given that Defendants litigated this case tenaciously,

and Plaintiff obtained a favorable verdict at trial which will aid future FLSA litigants, and recovered some wages and liquidated damages, a reduction of no more than 30% is sufficient.

### C. THE COURT SHOULD NOT CONSIDER PROPORTIONALITY BETWEEN THE AMOUNT OF RECOVERY AND THE FEES SOUGHT

No reduction in attorney's fees is warranted or appropriate merely because the amount of attorney's fees and costs exceeds Plaintiff's total recovery. Strict application of any proportionality rule is inimical to the public policy interests that are served by fee-shifting statutes such as the FLSA, the MWHL and the MWPCL. The Supreme Court has rejected such a proportionality requirement. *See City of Riverside v. Rivera*, 477 U.S. 561, 574 (1986) (affirming a $245,000.00 fee award which was more than seven times the $33,000 recovery). The *Riverside* Court concluded that "[a] rule of proportionality would make it difficult, if not impossible, for individuals with meritorious civil rights claims but relatively small potential damages to obtain redress from the courts and would be totally inconsistent with Congress' purpose of ensuring sufficiently vigorous enforcement of civil rights." *Id*. at 561. *See Jones v. Southpeak Interactive Corp. of Del.*, 777 F.3d 658, 676 (4th Cir. 2015) ("A court may consider whether a fee award seems reasonable in light of the amount of damages awarded. However, 'a substantial disproportionality between a fee award and a verdict, standing alone, may not justify a reduction in attorney's fees").

It is well-established that the FLSA is a civil rights statute, where the *Riverside* principles apply. *See Jackson v. Estelle's Place*, LLC, 391 Fed.Appx. 239 (4th Cir. 2010). In *Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311 (4th Cir. 2006), the Court noted that:

> Awards of attorney's fees substantially exceeding damages are not unusual in civil rights litigation. *See, e.g., Mercer v. Duke Univ.*, 401 F.3d 199, 211–12 (4th Cir.2005) (affirming $349,244 in attorney's fees awarded in Title IX suit yielding only nominal damage award); *Wadsworth v. Clindon*, 846 F.2d 265, 266–67 (4th Cir.1988) (affirming $13,317 in attorney's fees awarded in Fair Housing Act suit yielding $1,000 in compensatory damages); *Northington v. Marin*, 102 F.3d 1564, 1570–71 (10th Cir.1996) (affirming $93,649 in attorney's fees awarded in § 1983 suit yielding $5,000 judgment); *Estate of Borst*

> *v. O'Brien,* 979 F.2d 511, 517 (7th Cir.1992) (affirming $47,254 in attorney's fees in § 1983 suit yielding $500 in compensatory damages and $500 in punitive damages). Indeed, the attentive reader of this opinion will observe that our disposition is to affirm the district court's denial of the certification motion *and remand to allow the Appellants to pursue their individual claims.*

*Id.* at 328 n.20. *See also Thurairajah v. City of Fort Smith, Arkansas*, 3 F.4th 1017, (8th Cir. 2021) (Affirming award of $15,100.00 in attorney's fees when the amount of the judgment was $1.00); *Cook v. Greenleaf Township, Michigan*, 861 Fed. Appx. 31, 32, 38 (6th Cir. 2021) (Affirming award of $137,725.50 in attorney's fees when the plaintiff obtained a judgment of $500); *Salinas v. Commercial Interiors, Inc.*, 8:12-CV-1973-PWG, 2018 WL 3912857, 2018 Dist. LEXIS 138771 at *6, 9 (D. Md. August 16, 2018) (attorneys' fees of $276,099.77 awarded on a recovery of $1,041.00).

Additionally, in the case *Ramnarine v. Rainbow Child Development Center, Inc*., the Court awarded M&A attorneys' fees of $127,573.63 and costs of $23,171.55, after prevailing on a sole claim under the MWPCL and recovering $2,389.00. No. PWG-17-cv-02261, 2022 U.S. Dist. LEXIS 201713, at *8 (D. Md. Nov. 4, 2022). In this case, the difference between Plaintiff's recovery and the fees sought alone does not justify a reduction in the attorney's fees and costs.

## D. THE TIME AND LABOR EXPENDED (1st Johnson Factor)

### 1. CASE DEVELOPMENT/FACT INVESTIGATION[6] (17.20 hours valued at $7,715,75) (no categorical reduction)

This category includes various case management duties including reviewing the case management orders, the scheduling orders, preparing status reports, conducting some discussions with the Plaintiff about development of the case, routine communications with opposing counsel, chambers, or others involved in the case, and other similar tasks necessary to prosecute this case

[6] The total hours and fees indicated here are the final figures, after accounting for line-item reductions, categorical reductions (where applicable) and the 30% global reduction. See Ex. A.

and comply with the Federal Rules and the Court's Local Rules. *See* Ex. A. It also includes factual investigation necessary to develop Plaintiff's claims throughout the case. The work in this category was delegated to lower-level timekeepers at M&A which reduced the total attorneys' fees incurred. Ex. A. The remaining time is modest, and the fees should be awarded in full.

**2. PLEADINGS (3.92 hours with a value of $1,555.40) (no categorical reduction)**

This category concerns all time related to the Complaint, amendments to the Complaint, and service of the Complaint, including the preparation and filing of affidavits of service, effecting service, and reviewing pleadings. This work was mandatory and required by Federal Rule 4 to perfect service on the Defendants. Moreover, the time spent was reasonable considering the length of the case and that the pleadings were amended by Plaintiff to add a defendant. ECF No. 30. Thus, the full amount of fees sought should be awarded.

**3. BILINGUAL PARALEGAL INTERPRETING SERVICES (58.73 hours with a value of $10,571.40) (no categorical reduction)**

The Plaintiff only speaks Spanish. Therefore, he needed an interpreter for all meetings and verbal communications with counsel, and for mediations or court hearings that he attended, including the portions of the trial that were not interpreted by Court-certified interpreters. Ex. L ¶ 7. He also needed translation of written documents like discovery requests and responses and deposition transcripts. Ex. A. The verbal interpreting was done by the Firm's Spanish-speaking paralegals Maria Aguilar and Mirian Martinez. Both are highly experienced. Ex. B ¶¶ 20-21.

Bilingual paralegal translation services are compensable in this district, where Plaintiff's counsel has previously received such awards without objection. *See generally Carrera v. EMD Sales, Inc.*, No. JKB-17-3066, 2021 WL 3856287, 2021 U.S. Dist. LEXIS 164219 (D. Md. Aug. 26, 2021), where Plaintiff's counsel sought and obtained an award for bilingual paralegal

interpreting services, *see* No. JKB-17-3066, ECF No. 263-15 at 82, 96, 103, 109. *See also* *Carranza v. Ramirez*, No. PWG 20-cv-2687, 2022 WL 4080310, 2022 LEXIS U.S. Dist. 161253 at * 6, 17 (D. Md. Sep. 6, 2022); *Molina v. KP Stoneymill Inc*. No. GLS-19-3123, 2021 WL 2805838, 2021 U.S. Dist. LEXIS 125301 at * 21 (D. Md. July 6, 2021). In *Molina*, Magistrate Judge Simms recognized that Ms. Aguilar's "skills and qualifications" as a bi-lingual paralegal were "essential" to the Firm's provision of legal services to the plaintiff and awarded fees for her time, though at a reduced rate of $95.00 per hour. *Id*. Other courts have also found time spent by paralegals interpreting is compensable[7]. Therefore, bilingual interpreting services are compensable paralegal functions and Plaintiff should be awarded time for this work.

**4. DISCOVERY DISPUTES (8.40 hours valued at $3,067.75) (no categorical reduction)**

This category includes any time spent on discovery disputes, including time spent communicating with opposing counsel about those disputes, efforts to involve the Court in resolving those disputes, and drafting motions and correspondence related to the disputes. Below is a summary of the main disputes:

**Sufficiency of Defendants' First Set of Discovery Responses.** After reviewing the Defendants' answers to Plaintiff's first set of interrogatories and their document production, Plaintiff drafted a deficiency letter and Defendants responded to the letter on June 1, 2020. *See*

---

[7] *See also Diaz v. KC Plumbing, LLC*, No. 19 CV 4321 (DLI) (CLP), 2021 U.S. Dist. LEXIS 39409, 2021 WL 7500316, at *15 (E.D.N.Y. 2021) (finding $125 per hour reasonable for paralegal who "speaks Spanish and assisted in translation during attorney-client meetings, presumably saving the cost of a translator"); *Cohetero v. Stone & Tile, Inc*., No. 16-CV-4420 (KAM)(SMG), 2018 U.S. Dist. LEXIS 12280, 2018 WL 565717, at *5 (E.D.N.Y. Jan. 25, 2018) (approving $125 hourly rate for paralegals in light of language skills). *Apolinar v. Glob. Deli & Grocery, Inc*., No. 12-CV-3446 (RJD) (VMS), 2013 U.S. Dist. LEXIS 138137, at *46 (E.D.N.Y. 2013) (awarding fees for a paralegal who interprets for clients in Spanish).

Compilation of Letters at 1-6, Ex. M. While Defendants disputed some of the alleged deficiencies, they acknowledged the initial production was incomplete and agreed to provide supplemental documents and interrogatory answers. Ex. M. Defendants produced supplemental documents on June 19, 2020, along with interrogatory answers. Ex. L ¶ 8. Thus, Plaintiff prevailed on this dispute.

**Issues Raised in Plaintiff's October 13, 2020, Letter to Judge Copperthite.** On October 13, 2020, Plaintiff sent a letter to Judge Copperthite seeking a resolution of the Parties' dispute as to three categories of documents which Defendants objected to producing: (1) emails, including emails sent to or by Christina Stouffer, and all emails from Defendants' account which mention Plaintiff; (2) QuickBooks reports; and (3) records from Armour's contractor accounts at Home Depot and other stores. The Plaintiff prepared for and attended a discovery conference before Judge Copperthite in connection with the dispute and partially prevailed. *See* ECF No. 38.

Specifically, the Court ordered Defendants to produce the emails sought. ECF No. 38. The Court ordered the production of some QuickBooks reports. *Id*. The Court denied the request for contractor records. *Id*. Thus, Plaintiff obtained most of the relief sought.

**Final Extension of Discovery**. On December 18, 2020, Plaintiff filed a motion for a 60-day extension of discovery with no limitation. ECF No. 40. Defendants opposed the motion but agreed to a 45-day extension for the limited purpose of discovery related to C. Stouffer' status as an employer. ECF No. 41. The Court denied Plaintiff's request but did extend discovery for the duration and scope that Defendants agreed to. Plaintiff is not seeking any attorneys' fees incurred in connection with this dispute because he did not prevail.

**Timing of Mr. Alvarenga's Deposition**. Another dispute that required Court intervention involved whether Plaintiff could substitute witness Salvador Alvarenga for another deponent

whose deposition Plaintiff had scheduled. Ex. L ¶ 9. Plaintiff notified Defendants during discovery he was going to depose several of his co-workers. *Id*. Plaintiff was able to contact Mr. Alvarenga, who was known to Defendants because he was employed by them but whose deposition Plaintiff had not specifically noted. *Id*. Plaintiff sought to substitute Mr. Alvarenga for another witness who was scheduled to be deposed but Defendants vehemently objected. *Id*. This issue was raised with the Court and the Court allowed Plaintiff to take Mr. Alvarenga's deposition on the date Plaintiff selected, over the Defendants' objections. *Id*. Because Plaintiff was largely successful in litigating the discovery disputes in this case and obtained substantially all the relief sought, he is entitled to the attorneys' fees sought.

**5. WRITTEN/DOCUMENT DISCOVERY (66.50 hours valued at $23,055.20 (no categorial reduction))**

This category includes written and deposition discovery as well as expert discovery, it also includes time spent reviewing discovery documents, and trying to obtain documents such as Defendants' tax returns and Plaintiff's MVA records through signed releases. Communications related to discovery generally (not discovery disputes) and drafting motions to extend discovery which were not opposed, are also included here. The category does not include any motions or communications related to discovery disputes, which are covered in the "Discovery Disputes" category. Discovery in this case lasted from October 2019 to March 2021 and was extended a total of 6 times. Ex. L ¶ 10. The scope of discovery was framed by the disputed issues in this case which were numerous and complex.

Moreover, Plaintiff had to respond to Defendants' shifting litigation strategy, including a failed and ultimately abandoned counterclaim, Defendants' initial concession that C. Stouffer was an employer and then retracting this position, and a belated assertion of the FLSA good faith

defense which required Plaintiff to propound supplemental discovery. The disputed issues were as follows:

**<u>Plaintiff's Status as an Employee</u>.** Defendants' primary defense to liability was Plaintiff was never an employee but was instead an independent contractor not entitled to overtime. This issue required discovery on the factors identified in *Schultz v. Capital Int'l Sec., Inc*., 466 F.3d 298, 304 (4th Cir. 2006), which effectively covered every aspect of Plaintiff's relationship with Defendants. Defendants also initially relied on an independent contractor agreement that they contend Plaintiff signed. Ex. L ¶ 10. Plaintiff's expert established the agreement was not signed by him and Defendants did not attempt to reply on it at trial. *Id*.

**<u>Christina Stouffer's Status as an Employer.</u>** Plaintiff vigorously litigated this issue. However, the Court ultimately ruled C. Stouffer was not an employer of Plaintiff. ECF No. 107. Plaintiff is not seeking attorneys' fees related to any discovery which was relevant solely to establishing C. Stouffer's liability. However, in many instances, the discovery relevant to whether C. Stouffer was an employee was relevant to other issues on which Plaintiff prevailed.

For example, the emails were probative evidence that Plaintiff did not communicate with customers, negotiate the scope of work, pricing, and materials, or deal with customer complaints. Ex. L ¶ 11. The emails also showed that it was Defendants' practice to send employees ("crews") to Home Depot and other stores in the morning before starting their first day's job. Similarly, the phone records proved valuable in showing that Plaintiff would work on Saturdays, something that Defendants denied at trial. *See* ECF No. 107 at 12 n.5. Thus, most of the time spent reviewing the emails and phone records is not truly segregable from the Plaintiff's successful claims. Ex. L ¶ 11. To the extent there is an overlap between work in furtherance of successful and unsuccessful

claims, it is accounted for by the categorial and across the board reductions in this and other categories for lack of success. *Id*.

The tax records which Plaintiff obtained from Defendants' accountant and attempted to get from the IRS through a release form, along with the bank records for Defendants' personal and business bank accounts, were relevant to both C. Stouffer's employer status but also to whether the entity Defendants were covered enterprises under the FLSA. *Id*. ¶ 12. This issue was disputed by Defendants until the eve of trial. *See* Pre-Trial Order, ECF No. 84 at 37.

**Plaintiff's Uncompensated Time Stores**. Plaintiff alleged Defendants required him to go to construction supply stores in the morning before his first job to pick up and load materials but did not pay him anything for this time. *See* ECF No. 33. Plaintiff conducted discovery to try and establish the frequency of these trips by obtaining records from Defendants' account at Home Depot and by obtaining Defendants' business bank account records which would identify when certain purchases were made at these stores. Ex. A.

**Plaintiff's Damages**. Plaintiff had to establish the hours he worked because admittedly, Defendants did not preserve the only record of Plaintiff work hours - the text messages he sent to C. Stouffer. Plaintiff attempted to reconstruct his hours using his paychecks, which proved difficult given that he was often paid in irregular intervals, and witness testimony. ECF No. 107.

**The Good Faith Defense**. Nearly a year into the case, Defendants raised the defense of good faith under the FLSA. ECF No. 26. In response, Plaintiff propounded additional discovery requests to all Defendants on this issue. Plaintiff successfully rebutted this defense at trial. Ex. L ¶ 13; ECF No. 107.

**Enterprise Coverage Under the FLSA**. Defendants did not concede this point initially. To ascertain the gross income of Defendants, Plaintiff obtained in discovery Defendants' tax

records from the IRS, records from Defendants' accountant, and their bank records. Ex. L ¶ 14. However, on the eve of the trial, Defendants stipulated that they were a covered enterprise. *Id*.

Overall, Discovery was handled efficiently, with most of the work being delegated to paralegals and then supervised and reviewed by a senior attorney. Ex. A. Considering the voluntary reductions in this category, the remaining time sought is reasonable and should be granted.

**6. DEPOSITIONS (50.54 hours sought with a value of $21,565.25)**

This category includes the time spent preparing for depositions, such as identifying exhibits and reviewing discovery documents, as well as taking the depositions, outlining the depositions, drafting notices of deposition, trying to locate and serve possible deponents, and communicating with opposing counsel about depositions. Ex. A. Plaintiff only took three depositions in this case and was deposed by Defendants. All the deponents testified at trial. ECF No. 107. The overall time sought is reasonable given the duration of this case and should be awarded.

**7. TRIAL PREPARATION AND POST-TRIAL MOTIONS (226.42 hours sought with a value of $88,735.82 (10% categorical reduction))**

Trial preparation included the following tasks: reviewing and compiling the exhibits to be introduced at trial; preparing objections to Defendants' exhibits; negotiating with Defendants about the objections to try and resolve them; preparing a pre-trial statement, including a witness list and an exhibit list; successfully opposing Defendants' motion *in limine*; speaking with client about evidence and preparing him for his testimony and that of witnesses; preparing stipulations of fact and communicating with opposing counsel about them; arranging for court-certified interpreters; identifying and locating third-party witnesses; speaking to witnesses, preparing subpoenas and arranging for service of subpoenas; preparing for the examination of witnesses; researching the admissibility of certain of Defendants' exhibits. *See* Ex. A.

The work in this category also includes the time spent preparing the post-trial memorandum, a supplement to the memoranda, and a memorandum regarding the Home Depot records. ECF Nos. 97, 99, 102. A lot of the work in this category was delegated to associate attorney Andrew Balashov and paralegal Christina Melehy, which reduced the fees. Ex. A. The remaining work was carried out by Mr. and Mrs. Melehy who are most familiar with the facts of this and could therefore prepare for the trial efficiently and quickly. Ex. A. Plaintiff also made substantial voluntary reductions in this category. The remaining time should be awarded.

**8. TRIAL ATTENDANCE (53.48 hours valued at $24,998.40 (20% categorical reduction))**

Plaintiff seeks attorneys' fees for the attendance (and travel time) of three individuals at trial: (1) Omar Vincent Melehy – lead counsel; (2) Suvita Melehy – co-lead counsel; and (3) Christina Melehy– litigation paralegal. *See* Ex. A. Under the Local Rules, there is no prohibition on whether more than one attorney can be compensated for attending trial. *See* Appendix B at 124 n.5. Rather, it depends on the complexity of the case and each lawyer's role. The complexity and length of the trial may also justify staffing the trial with a paralegal. *Id*. Because two lawyers were involved, Plaintiff has voluntarily reduced the fees sought in this category by 20% to account for any duplication of efforts. *See* Ex. A.

Here, the fees sought are justified by the number of contested issues and exhibits as well as the length of trial. It was essential for the Plaintiff to have two trial counsel because of the division of roles between Mr. and Mrs. Melehy. Ex. B ¶ 40. Mr. Melehy examined Mr. and Mrs. Stouffer and took responsibility for delivering the closing argument. *Id*. Suvita Melehy took responsibility for the remaining witnesses, including the Plaintiff, and addressing certain objections which were raised with the Court as to specific testimony and exhibits. *Id.*

Moreover, both actively participated in the trial, by examining witnesses and arguing objections. *Id.* The presence of Christina Melehy, a litigation paralegal, was also necessary for note taking and the presentation of exhibits electronically. *Id*. ¶ 41. She was also the person most familiar with the exhibits because she prepared them and could quickly locate materials when they were needed by Mr. or Mrs. Melehy. *Id*. By having her in the courtroom, Plaintiff's counsel was able to focus on trial strategy and ensure the seamless and orderly presentation of evidence in Plaintiff's case in chief. *Id*. This would not be possible if Plaintiff's counsel had to manipulate the exhibits themselves. *Id*.

**9. DAMAGES CALCULATION (5.53 hours valued at $1,327.20 (no categorical reduction))**

Calculating damages in this case was complicated since there were no time records and Plaintiff's counsel needed to rely on multiple factual sources including the Plaintiff's checks, his recollection of his work hours, information in the emails produced by Defendants regarding the morning load-time, and the testimony of a co-worker, Salvador Alvarenga. Ex. L ¶ 16. The Defendants also issued payments to Plaintiff on an irregular basis, making it very difficult to associate a check with a particular pay period. *Id*. A lot of the work was delegated to paralegals at M&A, which reduced the overall attorneys' fees incurred. Ex. A. Thus, the fees are reasonable.

**10. ADR/SETTLEMENT (16.77 hours with a value of $8,042.13 (no categorical reduction))**

This category includes time spent communicating with the opposing counsel, speaking to the clients about settlement, preparing written settlement demands, attending a mediation session in Baltimore before Magistrate Judge Gesner, and then engaging in further settlement discussions after mediation. Ex. A. Plaintiff's counsel also communicated with Plaintiff about any settlement

offers made by Defendants and explained those offers to Plaintiff. *Id*. While the matter did not settle, Plaintiff's efforts in furtherance of settlement are compensable.

**11. HEARING ATTENDANCE (7.7 hours valued at $3,445.05 (no categorical reduction))**

This does not include time spent at the trial. That time is billed under a separate category – Trial Attendance. It includes the time spent at any hearing or conference held by the Court, including status conferences, discovery dispute hearings and the pre-trial conference, along with any associated travel time. Time spent traveling to the hearings is capped at 2 hours each. *See* Appendix B of the Local Rules. Plaintiff is entitled to the time spent at the hearings because he achieved some level of success at all of them.

**12. FEE PETITION (18.48 hours valued at $6,015.80)**

Plaintiff is entitled to attorneys' fees and costs incurred in seeking fees and costs. The duration of the case, the amount of attorneys' fees and costs at issue, and the fact that the case went to trial, all justify the amount of time spent preparing the fee petition. This case was litigated over 4 years, and it was resolved only after a merits trial. Therefore, all the "litigation-phase" categories apply, and Plaintiff had to expend considerable time sorting over a thousand individual time entries into the appropriate categories. Plaintiff's counsel also took a serious approach to his obligation and performed a two-stage review of the billing records. Ex. B ¶ 31.

The petition itself is detailed, and supported with robust legal argument, detailed time records, and multiple affidavits from Plaintiff's counsel and other counsel who opine about the reasonableness of the rates sought. Plaintiff also prepared a bill of costs and memorandum in support of the bills of costs and prepared a detailed spreadsheet of his costs. Exhibit I. Thus, this time should be awarded, including the additional time preparing the reply brief, which Plaintiff will request in a separate supplement to this motion.

**13. MOTIONS (67.47 hours with a value of $27,532.44 (15% category reduction))**

Defendants moved for summary judgment on two issues: C. Stouffer's status as an employer, and whether Plaintiff can meet his burden and show that Defendants had actual or constructive knowledge of his work time loading materials at Home Depot and other stores. ECF No. 48. Plaintiff successfully opposed summary judgment on the latter issue. ECF No. 66. As to C. Stouffer's employer status, the Court initially granted summary judgment to Defendants but then reversed after Plaintiff moved for reconsideration under Federal Rule 59. ECF No. 80. Plaintiff also successfully opposed Defendants' motion for leave to file a counterclaim because Defendants withdrew their motion, and abandoned their counterclaim, after Plaintiff opposed it. ECF No. 24. Thus, all the time in this category should be awarded.

**D. THE NOVELTY AND DIFFICULTY OF THE QUESTIONS RAISED AND THE SKILL REQUIRED TO PERFORM THE LEGAL SERVICES RENDERED (*JOHNSON* FACTORS 2 AND 3).**

First, this is a FLSA case, which requires counsel with specialized knowledge. *Grimm v. Moore*, 4:14CV329, 2015 WL 4776077, at *2 (E.D. Tex. 2015). While not all FLSA cases present novel or difficult questions, this case did, such as standards of proof in the absence of time records. *Fields v. Luther*, JH-84-1875, 1988 WL 121791, at *2 (D. Md. July 12, 1988) (standard of proof in light of lack of records was novel issue in FLSA case).

**E. OPPORTUNITY COSTS IN PRESSING THE INSTANT LITIGATION (*JOHNSON* FACTOR 4).**

Plaintiff's counsel had substantial opportunity costs. M&A handles mostly wage and hour cases in which they are compensated on a contingent hourly basis. Ex. B ¶¶ 38. During the time that M&A worked on this case, they could have worked on other cases brought under the District of Columbia wage statutes. In such cases, Omar Melehy and Suvita Melehy are entitled to receive, by statute, attorneys' fees at the rate specified in the Legal Services Index Laffey Matrix, which

was $997 per hour for any attorney with 20 years of experience or more through May 31, 2023, and is higher now. *See Id*. ¶ 38. *See Herrera v. Mitch O'Hara LLC*, 257 F.Supp.3d 37, 46 (D.D.C. 2017). When Plaintiff's counsel began discovery in this case, they had 5 D.C. Wage Law cases. Ex. B ¶ 37. And when Plaintiff's counsel began preparing for trial in this case, they had 23 cases under the D.C. wage laws pending. *Id*.

**F. THE CUSTOMARY FEE FOR LIKE WORK (*JOHNSON* FACTOR 5).**

*See* Argument, Section II regarding Plaintiff's rates, above.

**G. EXPECTATIONS AT THE OUTSET OF LITIGATION (*JOHNSON* FACTOR 6).**

Plaintiff's counsel took this case on a full contingency basis, expecting to be paid upon the conclusion of the case either through a negotiated settlement, or by petitioning this Court for a fee award. *See* Ex. B ¶ 30; Ex. D. In doing so, Plaintiff's counsel accepted all the risk associated with a pure contingency agreement. *Id*. The case has been pending for approximately 4 years during which time Plaintiff's counsel has not received any compensation and has advanced all the costs. This justifies a "risk premium." *See Blake v. Baltimore County, Md.*, 12 F. Supp. 3d 771, 776 (D. Md. 2012). Additionally, Plaintiff's counsel had an expectation that, at this juncture, the matrix being nine years old, it would at least have been updated. Ex. B ¶ 36.

**H. TIME LIMITATIONS IMPOSED BY THE CLIENT OR THE CIRCUMSTANCES (*JOHNSON* FACTOR 7).**

The three-year statute of limitations will operate to bar any portion of Plaintiff's claims which accrued more than three years before the complaint was filed (in this case prior to August 12, 2019) and places an importance on moving as quickly as possible to develop and file the case. Plaintiff retained the firm in August 2019, and with each passing day, more and more of his claims fell outside of the statute of limitations. *See* Ex. D. Thus, M&A needed to move quickly in

investigating and preparing the complaint. In addition, there was some pressure on M&A to bring the case to conclusion quickly because Plaintiff is not entitled to pre-judgment interest under the MWHL or the FLSA. Thus, because of the time value of money, the value of his claims erodes the longer it takes to bring the case to conclusion.

### I. THE AMOUNT IN CONTROVERSY AND THE RESULTS OBTAINED (*JOHNSON* FACTOR 8).

M&A acknowledges that Plaintiff was only awarded approximately 17% of the damages sought. Nonetheless, Plaintiff still prevailed under difficult circumstances, notably the absence of time records and lack of witnesses. Plaintiff's counsel has made an across-the-board reduction of 30% to account for the degree of success. The Court must also consider the important public interests served by this litigation as part of Plaintiff's overall success.

### J. THE EXPERIENCE, REPUTATION AND ABILITY OF COUNSEL (*JOHNSON* FACTOR 9).

Counsel's skill is best reflected in the quality of their work product. This case was skillfully litigated, skillfully briefed and skillfully tried. Mr. and Mrs. Melehy served as lead counsel throughout the case. Mr. Melehy currently has 36 years of litigation experience, and one additional year clerking for a Judge on the Maryland Court of Appeals, Maryland's highest state court. Ex. B, ¶¶ 1–6. Mr. Melehy (1) has tried 19 cases to juries, (2) has been lead counsel in 32 bench trials, seven of which were wage and hour cases, (3) has conducted approximately 19 administrative evidentiary hearings in employment cases where he was lead counsel, (4) has been lead counsel in approximately 32 appeals in state or federal court, and (5) has been involved in three class/collective actions, two of which were wage cases pending before this Court. *Id*. ¶¶ 10-17.

Mr. Melehy's reputation as a skilled litigator, trial lawyer, and plaintiff's employment lawyer is on par with the high-quality representation that he demonstrated during the present

litigation and is consistent with his vast experience. Mr. Melehy has achieved an "AV" rating – the highest rating available – from Martindale-Hubbell. *Id.* ¶ 18. This AV rating is directly related to his reputation as a highly skilled litigator because attorneys and judges provide the reviews that form the basis of the AV rating. *Id.* Mr. Melehy was also the president of the Metropolitan Washington Employment Lawyers Association from 2021 to 2023. *Id.* ¶ 8.

Michal Shinar, an employment law practitioner, opined that Omar Melehy and the firm of Melehy & Associates are deserving of the rates they are seeking because they have a very high level of experience, and the skill and knowledge necessary to command prevailing market rates in this locality. Ex. E ¶ 14. She further states that "Mr. Melehy is known in the employment law field as a talented plaintiff-side employment lawyer with a deep knowledge of wage and hour laws, civil litigation practice, and trial practice" and that "[h]e is considered a leading lawyer in the field and has been recognized by his peers through his election to leadership positions within MWELA and repeated invitations to speak." *Id.* ¶ 14.

Suvita Melehy is the Firm's managing attorney. Ex. L ¶ 2. She has practiced employment law for 24 years and specifically in wage and hour law since 2000. *Id.* ¶ 3. In her career, Ms. Melehy has handled approximately 48 bench trials or evidentiary hearings in state and federal courts. *Id.* ¶ 4. Ms. Melehy is also responsible for managing all aspects of the Firm's discovery process and she expertly handled all the discovery in this case. *Id.* ¶ 5. She has extensive training and experience in the field of e-Discovery. *Id.* In her career, she has taken more than 68 depositions and argued numerous discovery motions and disputes before state and federal courts. *Id.* ¶ 6.

Associate attorney Andrew Balashov also worked extensively on this case. He has been at the Firm since 2015, when he was admitted to the Bar and primarily practices in the field of wage and hour litigation. Ex. B ¶ 19. Mr. Balashov assisted with preparing discovery responses, drafting

the motions to compel, opposition to summary judgment and motion for reconsideration, drafting other procedural and discovery motions, preparing for trial and working on this motion. *Id*.

**K. UNDESIRABILITY OF THE CASE (*JOHNSON* FACTOR 10).**

The contingent nature of the case and the fact that a wage case can be met with staunch opposition from a usually well-financed employer-defendant, as well as the relatively modest damages awards that are often made, makes some FLSA cases undesirable to small law firms like M&A. *See Warnick v. True Commun., Inc.*, 1:15CV1377 (GBL/JFA), 2016 WL 7031306, at *4 (E.D. Va. Apr. 15, 2016).

**L. NATURE AND LENGTH OF THE ATTORNEY-CLIENT RELATIONSHIP (*JOHNSON* FACTOR 11).**

The Firm represented Plaintiff in another FLSA case styled *Guillen v. Pro Services LLC*, Case No. 20-0055-RDB. Ex. B ¶ 39. That case was filed in January 2020, and was resolved through a settlement. *Id*.

**M. ATTORNEY'S FEES AWARDS IN SIMILAR CASES (*JOHNSON* FACTOR 12).**

Plaintiff's counsel was awarded attorneys' fees at rates at or near the rates they seek herein in a default FLSA case. *See Quijano, et al., v. Mizpah Building Services, LLC, et al.*, Case No. 19-00038-PJM. In that case, Omar Vincent Melehy was awarded an hourly rate of $500.00 and $600.00, depending on when the time was incurred; Suvita Melehy was awarded an hourly rate of $450.00 and $550.00 and Andrew Balashov was awarded an hourly rate of $285.00 and $325.00. The firm was awarded rates of $155.00 and $175.00 for paralegals and law clerks. *See* ECF Nos. 13-4, and 15 in Case No. 19-00038-PJM. Moreover, on August 24, 2021, in a FLSA case, the Court awarded the following rates to M&A, concluding that they were reasonable:

| | |
|---|---|
| Omar Vincent Melehy: | $625 per hour; |
| Andrew Balashov: | $350 per hour; |
| Law Clerks and Paralegals: | $180 per hour. |

*See Boyd v. SFS Communications, LLC,* Civil No. 15-cv-3068 PJM, ECF No. 195-2 at 28 (motion for attorney's fees); ECF No. 197 (Order). More recently, on August 22, 2022, in *Orellana v. ACL Cleaning Services, et al*., a single-Plaintiff FLSA case (also a default), Judge Chasanow awarded Omar Melehy fees at the rate of $600.00 per hour, Suvita Melehy at the rate of $550.00 per hour and Plaintiff's counsel Andrew Balashov at the rate of $300.00 per hour. *See* ECF No. 67 in Case No. 1:19-cv-02318-DKC. She justified the higher rates in part because the "guideline rates for these position have not been updated in eight years." *Id*. at 5.

**III. THE PLAINTIFF IS ENTITLED TO HIS REASONABLE COSTS.**

Plaintiff seeks costs of $31,584.69 (less any costs which are taxed by the Clerk). Part of the total costs are taxable pursuant to 28 U.S.C. §1920, and Plaintiff has filed a Bill of Costs contemporaneously with this Motion.[8] Plaintiff is not seeking a double recovery of costs, but to the extent the Clerk finds any of the costs in the Bill of Costs are not taxable, Plaintiffs ask the Court to award them as out-of-pocket expenses which Plaintiff is entitled to as a prevailing party under the FLSA and MWHL. The Court has discretion to award a broad array of costs in FLSA cases pursuant to 29 U.S.C. § 216(b). *Roy v. County of Lexington*, 141 F.3d at 549. The costs that may be recovered are "those reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client, in the course of providing legal services." *Spell v. McDaniel*, 852 F.2d 762, 771 (4th Cir.1988) (internal citations omitted); *Vaughns v. Board of Educ. of Prince George's County*, 598 F.Supp. 1262, 1289–90 (D.Md.1984) (listing types of recoverable costs). A list of all costs sought (taxable and non-taxable), is contained in Exhibit I.

[8] Plaintiff incorporates, by reference herein, his Bill of Costs and Memorandum in support.

**A. NON-TAXABLE COSTS**

All the following costs are passed along to the Firm's fee-paying clients and are not part of the hourly rates charged by the Firm. Ex. B ¶ 33. The requested costs and expenses have been verified by Plaintiff's counsel to ensure they are accurate. *Id*. ¶ 35. They are described as:

Postage. Plaintiff is entitled to recover reasonable and necessary postage expenses. *Kabore v. Anchor Staffing, Inc.*, CIV. L-10-3204, 2012 WL 5077636, at *10 (D. Md. Oct. 17, 2012) (awarding postage).

Westlaw, LexisNexis Legal and Pacer Database Charges. Appendix B permits recovery of costs for "computerized on-line research." *See* Appendix B(4)(a); *1899 Holdings, LLC v. 1899 LLC*, CCB-12-297, 2015 WL 6560014, at *7 (D. Md. Oct. 27, 2015). Ex. B ¶ 34.

Expert Witness Fee. Expert fees are recoverable under fee-shifting statutes. *Makray v. Perez*, 159 F. Supp. 3d 25, 27 (D.D.C. 2016) (noting that the Court may allow a prevailing party expert fee as part of a costs award in Title VII case). Here, Plaintiff seeks fees paid to his document examiner who prepared to testify at trial if Defendants tried to introduce the independent contractor agreement, they allege Plaintiff signed.

E-Discovery Costs. Plaintiff seeks e-discovery costs which include: (1) data storage fees charged by Logikcull, including the upload fee (which is a flat rate) of $250; (2) document retrieval fee charged by Verizon, Santander, and the Howard County and Montgomery County courts, for producing documents; (3) reimbursement for a subscription to the online Whitepages used to analyze the phone records he obtained; and (4) the cost of a USB cable which was purchased to backup Plaintiff's mobile telephone at the start of this case to preserve his mobile data. Ex. I. E-discovery storage costs are typically passed along to the clients by law firms. Here, the Plaintiff was responsible for "all expenses reasonably necessary to prosecute his claims," and which were

advanced by the Firm during litigation. Ex. B ¶ 33. These expenses are excluded from the Firm's hourly fees and include "document reproduction costs." *See* Retainer, Ex. D.

Trial – Travel Mileage, Parking and Meals. The mileage expenses were calculated at the IRS current reimbursement rate of $.65 per mile for the mileage incurred in 2023 and at the rate of $.575 per mile for mileage incurred in 2020. Ex. B ¶ 42. Plaintiff seeks the mileage fee to travel to and from trial incurred by Omar Vincent Melehy, Suvita Melehy, Senior Paralegal Christina Melehy, and Emily Wilson, who testified at trial as a foundational witness. Ex. A; Ex. B ¶ 43. Plaintiff also seeks the cost of meals at trial and during trial preparation when Plaintiff's counsel worked late into the evening to prepare for trial. *Id*. During meals, counsel met with the Plaintiff to prepare for examination and discuss trial strategy. The meals were delivered to avoid everyone having to travel off-site to get meals. *Id*.

**CONCLUSION**

For the reasons stated above, the Court should enter judgment against liable Defendants and in favor of Plaintiff for fees of $227,627.58, plus supplemental fees, and costs of $31,584.69.

Respectfully Submitted,

/s/ Andrew Balashov
Andrew Balashov, Fed. Bar No. 19715
MELEHY & ASSOCIATES, LLC
8403 Colesville Rd., Suite 610
Silver Spring, MD 20910
Telephone: (301) 587-6364
Facsimile: (301) 587-6308
Email: abalashov@melehylaw.com

*Attorneys for Plaintiff*