**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

JESUS NEHEMIAS MONTANO          *
GUILLEN,
                                *
      Plaintiff,
                                *
v.                                              Civ. No. DLB-19-2317
                                *
ARMOUR HOME
IMPROVEMENT, INC., *et al.*,     *
                                *
      Defendants.              *

<u>**MEMORANDUM OPINION**</u>

The prevailing party in a Fair Labor Standards Act case is entitled to reasonable attorneys' fees and costs. Jesus Nehemias Montano Guillen is the prevailing party. His lawyers, Melehy & Associates, secured a modest win for him, then requested an unconscionable fee on indefensible grounds. So the Court awarded only a reasonable fraction of the unreasonable fee sought. Now, Melehy & Associates moves for reconsideration, urging the Court to award the firm even more. The Court denies the motion.

**I.**    **Background**

To begin, the Court outlines the law governing fee petitions generally. Then the Court provides background on this case and the fee award at issue.

**A. Fee Petitions Generally**

If a plaintiff prevails on a Fair Labor Standards Act ("FLSA") claim, "[t]he court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorneys' fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). The plaintiff is the prevailing party if they have succeeded "on any significant issue in litigation which achieves

some of the benefit . . . sought in bringing suit." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). There is no dispute that Guillen prevailed here.

The amount to award is committed to the district court's "sound discretion." *Burnley v. Short*, 730 F.2d 136, 141 (4th Cir. 1984). The calculation is a three-step process. *McAfee v. Boczar*, 738 F.3d 81, 88 (4th Cir. 2013). First, the Court must determine the lodestar amount, which is a "reasonable hourly rate multiplied by hours reasonably expended." *Grissom v. The Mills Corp.*, 549 F.3d 313, 320–21 (4th Cir. 2008). In assessing reasonableness, the Court must consider the 12 factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974):

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorneys' opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorneys' expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 (4th Cir. 1978) (adopting *Johnson* factors). Second, "the Court must 'subtract fees for hours spent on unsuccessful claims unrelated to successful ones.'" *McAfee*, 738 F.3d at 88 (quoting *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 244 (4th Cir. 2009)). And third, "the court should award 'some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff.'" *Id.* (quoting *Robinson*, 560 F.3d at 244). The plaintiff "bears the burden of demonstrating that the requested fees are reasonable." *Jones v. Dancel*, 792 F.3d 395, 404 (4th Cir. 2015) (citing *Fair Hous. Council v. Landow*, 999 F.2d 92, 97–98 (4th Cir. 1993)).

A prevailing plaintiff is entitled to recover costs as well, but "only for reasonable litigation expenses." *Id.* (quoting *Daly v. Hill*, 790 F.2d 1071, 1084 (4th Cir. 1986)).

As the Supreme Court has warned, "determination of fees should not result in a second major litigation." *Fox v. Vice*, 563 U.S. 826, 838 (2011) (quotation omitted). To that end, district courts "need not, and indeed should not, become green-eyeshade accountants." *Id.* Instead, they may "take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorneys' time." *Id.* The goal: "rough justice." *Id.*

### B.  Guillen's Fee Award

Jesus Nehemias Montano Guillen filed suit against Armour Home Improvement, Inc., Armour Construction LLC, Robert Stouffer, and Christina Stouffer for violations of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.*; the Maryland Wage and Hour Law, Md. Code Ann., Lab. & Empl. §§ 3-401 *et seq.*; and the Maryland Wage Payment and Collection Law, Md. Code Ann., Lab. & Empl. §§ 3-501 *et seq.* ECF 1 & 33. After a four-day bench trial, the Court found Christina Stouffer not liable because she was not Guillen's employer but found the other defendants liable for $8,777.02 plus reasonable attorneys' fees and costs. ECF 107, at 1.[1]

Guillen's attorneys at Melehy & Associates, LLC ("M&A") petitioned for fees and costs that were utterly unreasonable: $233,861.04 in fees and $32,082.87 in costs, for a total of $265,943.91. ECF 134-1, at 1. The firm charged for non-compensable work. It overstaffed and overbilled. It billed based on verifiably inaccurate claims. And this was not the first time M&A had overbilled in these ways and been called out for doing so. So the Court granted the motion in part and denied it in part, awarding reasonable fees and costs: $31,039.44. ECF 137 (opinion) & 138 (order).

---

[1] The background of this case and the Court's findings of fact and conclusions of law are in the Court's post-trial memorandum opinion, ECF 107. In short, the Court found that Guillen, who did home improvement projects for Armour clients for several years, was an employee under the FLSA, not an exempt independent contractor; that Guillen was not paid for overtime and all the hours he worked; and that Christina Stouffer was not his employer.

The Court calculated M&A's fee award in three steps. First, the Court computed the lodestar fee. To identify the lodestar, the Court identified the reasonable rates for M&A's timekeepers, deducting 10 percent from the lodestar fee sought to approximate the appropriate reduction to the rates; identified the reasonable number of hours expended in each category, reducing the award in each category where and to the extent those hours were excessive; and reduced the resulting total by 75 percent (50 percent for poor billing judgment and then 25 percent for the persistence of poor billing judgment in the face of prior warnings from other courts). That yielded a lodestar fee of $43,406.51. Second, the Court considered whether to reduce the lodestar to eliminate hours expended on any completely unsuccessful claim. There was none, so the Court did not modify the lodestar on this basis. Third, the Court reduced the lodestar by 50 percent to account for the degree of success. That yielded the final fee award: $21,703.26.

The Court's deductions for persistently poor billing judgment bear elaboration here. Billing judgment requires billing accurately, with supporting documentation, for compensable tasks only. M&A did not exercise reasonable billing judgment. The Court provided several illustrative (but far from exhaustive) examples of M&A's failure to exercise billing judgment:

- **Double billing**: M&A billed $2,817.50 for one 4.9-hour trial preparation meeting between Ms. Melehy and Guillen on February 10, 2023. ECF 134-1, at 35. Then M&A billed the same amount for a meeting of the same length between the same people on the same day. *Id.* at 36. As M&A emphasized elsewhere, "The Plaintiff only speaks Spanish. Therefore, he needed an interpreter for all meetings and verbal communications with counsel." ECF 114-1, at 16. But M&A only billed for one 4.9-hour session of interpretation that day— another $882.00. ECF 134-1, at 46. What happened was clear: Ms. Melehy met with Guillen once but billed twice.

- **Implausible billing**: M&A billed for 23.7 hours of Ms. Melehy's time in a single day: 4.3 hours in this case and 19.4 hours in a different case. *See* ECF 114-2, at 29; ECF 127-12, at 2–3. Pressed to account for that extraordinarily implausible claim, M&A retracted it. ECF 131, at 17. On M&A's subsequent account, a paralegal performed the 4.3 hours of work attributed to Ms. Melehy in this case on that day. *Id.* at 17–18. Who, specifically? M&A said it did not know. ECF 131-6, at 1–2.

- **Impossible billing**: M&A billed for more hours attending trial than there were hours of trial to attend, for three out of four days of the trial.  M&A claimed its timekeepers attended trial for 29.5 hours: 7.5 hours on the first three days and 7 hours on the fourth. ECF 134-1, at 38. The minute entries told a shorter story. True, the first day of trial ran 7.5 hours. ECF 94. But the second was only 7 hours. ECF 95. The third dropped to 6 hours. ECF 96. And the fourth was not even 4.75 hours long. ECF 98. At best, these discrepancies revealed that counsel were reckless in failing to confirm their figures. At worst, these discrepancies suggested that counsel intentionally misrepresented how much time they spent in court in the hope of securing a bigger payout. Either way, M&A's billed hours for trial attendance were unreasonable because they were verifiably inaccurate.

- **Non-compensable work**: "Clerical work is not billable to an adversary." *Castillo Pacheco v. Mezeh-St. Mary's LLC*, No. TDC-21-2521, 2023 WL 5411071, at *4 (D. Md. Aug. 22, 2023) (citing *Ramirez v. 316 Charles, LLC*, No. SAG-19-3252, 2021 WL 662185, at *3 (D. Md. Feb. 19, 2021)). Nevertheless, M&A billed the defendants for clerical work in virtually every category. To cite just one example of non-compensable clerical work M&A billed at paralegal or attorney rates: M&A billed for at least 60 hours of making binders—

over $12,000 in binder bills—and refused to retract that request after the defendants rightly

challenged it.

Implausible, inaccurate, and inappropriate billing entries like these compelled the Court to find

that M&A had not exercised reasonable billing judgment.

But the Court did not have to rely on inferences alone to find that M&A had not exercised

reasonable billing judgment. M&A said so. Under pressure from the defendants, M&A confessed

to three of the errors in its fee petition: billing nearly 24 hours of Ms. Melehy's time in one day,

billing for the delivery of exhibit binders to the Court, and billing for entering deadlines on the

calendar. ECF 131, at 3. Here is how M&A explained its errors:

> Plaintiff's counsel spent a considerable amount of time reviewing the accuracy of
> the time records prior to submitting them, but given the volume of entries, time
> constraints, and issues that arose from combining time records from M&A's current
> billing system (Clio) with records from its legacy system (Abacus), not all the errors
> were fixed before the records were submitted to the Court.

*Id.* This explanation was as troubling as it was baffling. First, M&A's transition from one billing

system to another was not a plausible explanation for the three errors M&A invoked the transition

to explain. M&A could not seriously contend that switching from Abacus to Clio created

previously nonexistent billing entries for delivering binders or calendaring deadlines. And in the

affidavit M&A submitted to explain why it billed almost 24 hours of Ms. Melehy's time in one

day, M&A did not even try to attribute that implausible claim to its billing system switch. *See* ECF

131-6, ¶¶ 4, 8. M&A's explanation undermined its credibility.

Second, M&A's admission that its billing system transition created "issues" that precluded

it from ensuring that it submitted an accurate fee petition cast serious doubt on the accuracy of its

entire filing. *See* ECF 131, at 3. In effect, M&A conceded that because it changed billing software,

it prepared the fee petition in reliance on records that materially deviated from the ones it created

as it performed its work. And it was certainly curious that the resulting errors uniformly overrepresented M&A's entitlement to fees.

Third, and most importantly, M&A's statement was a confession that M&A did not exercise reasonable billing judgment. If the "volume of entries" was too high for M&A to verify them, *see id.*, then M&A should have excised the entries it could not confirm. If "time constraints" prevented M&A from ensuring the accuracy of its fee petition, *see id.*, then M&A should not have submitted it and expected the Court and the defendants to do the work M&A did not do. M&A could not admit that it billed inaccurately and for non-compensable work because it could not be bothered to exercise billing judgment and then expect the Court to award the full amount M&A requested. Because M&A thus failed to exercise billing judgment, the Court reduced the lodestar fee award by 50 percent.

Then the Court reduced the lodestar an additional 25 percent because this was far from the first time M&A had exercised poor billing judgment. In the previous year alone, multiple courts had denounced the firm for exploiting the fee petition process to turn "run-of-the-mill wage dispute[s]" into "windfall[s]—not for plaintiff, but for plaintiff's counsel." *See, e.g.*, *Munoz v. Telligent Masonry LLC*, No. 21-2789, 2023 WL 6389129, at *1 (D.D.C. Oct. 2, 2023); *Brackett v. Mayorkas*, No. 17-988, 2023 WL 5094872, at *8 (D.D.C. Aug. 9, 2023). In pursuit of "patently unreasonable" fees, *see Munoz*, 2023 WL 6389129, at *1, M&A submitted petitions loaded with "bloated" time entries and fees for "unnecessary" motions, *see Brackett*, 2023 WL 5094872, at *8. In case after case, the firm "billed excessive time on straightforward tasks" and "overstaffed," "employ[ing] a small army" of timekeepers, "several of whom often billed simultaneously." *Brackett*, 2023 WL 5094872, at *7. In consequence, courts expressed "doubt as to whether each

of plaintiff's claimed costs [is] submitted in good faith." *See Munoz*, 2023 WL 6389129, at \*10. M&A had a penchant for petitioning for fees that are "simply unacceptable." *See id.*

Nor was this the first time M&A had been called out for overbilling in these specific ways. In a previous case in this district, M&A attempted to bill the defendant for 25.8 hours of Ms. Melehy's time in a single day. ECF 127-13, at 2 (citing ECF 275-5, at 50 in *Carrera*, No. JKB-17-3066). Courts in this district and others had put the firm on notice that it may not bill for clerical work since at least 2021. *See Munoz*, 2023 WL 6389129, at \*9 ("Plaintiff's counsel has been personally admonished for claiming time for such work in prior cases.") (citing *Molina v. KP Stoneymill, Inc.*, No. GLS-19-3123, 2021 WL 2805838, at \*6 (D. Md. July 6, 2021)). Multiple courts in multiple jurisdictions had stricken fees for making binders from M&A's prior fee petitions. *See Munoz*, 2023 WL 6389129, at \*9; *Carranza v. Ramirez*, No. PWG-20-2687, 2022 WL 4080310, at \*3 (D. Md. Sept. 6, 2022); *Molina*, 2021 WL 2805838, at \*6. And M&A had attributed so many of its billing errors to inadvertent spreadsheet mistakes that over three years ago, one court advised the firm "that a refresher course in how to use Excel might be prudent." *See Chaten v. Marketsmart LLC*, No. PX-19-1165, 2020 WL 4726631, at \*7 n.9 (D. Md. Aug. 4, 2020), *report & recommendation adopted*, 2020 WL 13569350 (D. Md. Sept. 17, 2020). While M&A did not have the benefit of *Brackett*, *Munoz*, and *De Paredes* when the firm filed the original fee petition in this case, all three of those cases were decided before M&A filed its supplemental fee petition. And none of those cases said anything M&A should not have known already.

This was not even the first time M&A had been denounced as a "repeat offender." In *Munoz*, for example, the court observed that M&A's billing for non-compensable tasks

> is especially probative of the need for a downward adjustment in this case because counsel is a "repeat offender." . . . Plaintiff's counsel's inclusion of non-compensable clerical time entries in their fee request further confirms a need for a

> downward adjustment of the fee award in this case, especially because plaintiff's
> counsel has been notified of the improper nature of these requests in previous cases.

2023 WL 6389129, at *9. *Munoz* was decided late last year. As early as 2020, M&A was

admonished by a judge in this district for its repeated poor judgment in the fee petition process.

*See Chaten*, 2020 WL 4726631, at *7 ("Plaintiff's counsel should not expect Defendants to

compensate them for their mistake, especially when this is not the first time that such an Excel-

spreadsheet error has occurred.").

The Court found that the persistence of M&A's failure to exercise billing judgment bore

on multiple *Johnson* factors. *See Barber*, 577 F.2d at 226 n.28. First, these prior rulings against

M&A on comparable fee requests made it unreasonable for M&A to expect to recover for these

entries. Second, these reprimands spoke to the awards for similarly flawed entries in similar cases:

zero. Third, these authorities confirmed the customary fee for like work: again, zero. And

considering the matter holistically, the fact that M&A had been warned repeatedly that the firm

may not engage in these billing practices made it even more unreasonable for counsel to have tried

again here. "[B]ecause plaintiff's counsel ha[d] been notified of the improper nature of these

requests in previous cases," a further reduction was necessary. *See Munoz*, 2023 WL 6389129, at

*9 (reducing a fee award to M&A by two-thirds in part because of M&A's repeated, pervasive

billing for non-compensable work) (citing *Baylor v. Mitchell Rubenstein & Assocs.*, 857 F.3d 939,

955 (D.C. Cir. 2017) (Henderson, J., concurring)). Accordingly, the Court reduced the entire

lodestar amount by another 25 percent because M&A was a repeat offender.

With all of this in mind—and more, as recounted in the Court's prior opinion—the Court

further found that M&A's fee petition "shock[ed] the conscience of the court." *Landow*, 999 F.2d

at 94. The Court considered that the Fourth Circuit has held that a district court may deny an

outrageous fee request without any detailed analysis whatsoever. *Id.* at 96 (citing *Sun Publ'g Co.*

*v. Mecklenburg News, Inc.*, 823 F.2d 818, 819 (4th Cir. 1987)). Although *Landow* concerned a fee petition under 42 U.S.C. § 1988, *see id.*, courts have not hesitated to translate the generally applicable principles for fee awards under that statute to fee awards under the FLSA. *See, e.g.*, *Carrera v. EMD Sales, Inc.*, No. JKB-17-3066, 2021 WL 3856287, at *3–4 (D. Md. Aug. 27, 2021).

In *Landow*, the plaintiff brought a case involving two independent causes of action. *Landow*, 999 F.2d at 94. After a five-day bench trial, the plaintiff lost on the claim to which they had devoted "the overwhelming majority" of their time. *Id.* at 94–95. But they won on one subpart of a secondary claim. *Id.* Afterwards, the plaintiff claimed that they had incurred $604,113 in attorneys' fees and costs and moved for "only" $537,113, after deductions for work on their unsuccessful claims. *Id.* at 95. The plaintiff's records were a mess: The plaintiff failed to distinguish fees attributable to one claim and fees attributable to another, they did not clearly identify what they excluded or why, and the individual entries offered little more than "general descriptions" like "review discovery and draft discovery." *Id.* Indeed, "the district court refused to rely on the time sheets" the plaintiff submitted because they were "so grossly in excess of any realistic amount as to be unworthy of consideration, even as a starting point." *Id.*

Understandably frustrated by the plaintiff's exorbitant fee request and the flawed supporting documents, the district court pointedly noted that "if there are motions for attorneys' fees and expenses that should be disallowed in their entirety simply because of the outrageously excessive amount requested, the pending motion would fit the bill." *Id.* Nevertheless, concerned that it did not have the discretion to deny the petition outright, the district court awarded the plaintiff $20,000. *Id.* But the district court made one request of the Fourth Circuit: "[S]hould this

matter be appealed and the appellate court find that this court had discretion to deny all legal fees here, the award of legal fees made herein should be rescinded without remand." *Id.*

Determined to go double or nothing, the plaintiff appealed. *Id.* In response, the defendant appealed too, challenging the decision not to deny the fee petition in its entirety. *Id.* at 95–96. The Fourth Circuit reversed—and left the plaintiff emptyhanded. *Id.* at 97–98.

The Fourth Circuit emphasized that a prevailing plaintiff "may not submit a fee request which is merely an opening bid in the quest for an award." *Id.* at 97 (citing *Lewis v. Kendrick*, 944 F.2d 949, 957–58 (1st Cir. 1991)). The burden of identifying which hours are recoverable rests on the party moving for fees, not the district court. *Id.* at 98. When the plaintiff asks for an unreasonable fee, the district court has no obligation to provide a reasonable one. *Id.* (citing *Brown v. Stackler*, 612 F.2d 1057, 1059 (7th Cir. 1980)). A plaintiff's "woefully inadequate time records, coupled with its failure to make a good faith effort to exclude fees attributable to unsuccessful claims" can permit the court to conclude the plaintiff's "fee petition was so outrageously excessive it shocked the conscience of the court." *Id.* at 97.

M&A's petition all but demanded the same result. M&A's supporting documentation was thoroughly flawed. *See id.* at 95. M&A's fee petition in this case was more like "an opening bid in the quest for an award" than a good-faith account of its fees. *See id.* at 97. It seemed important to discourage overbidding like M&A's, for if courts "award a reasonable fee when an outrageously unreasonable one has been asked for, claimants would be encouraged to make unreasonable demands, knowing that the only unfavorable consequence of such conduct would be reduction of their fee to what they should have asked for in the first place." *Id.* at 96 (quoting *Brown*, 612 F.2d at 1059). M&A's petition wasted scarce public resources by inducing the Court to weed out many of the firm's excesses line-by-line. The fee award M&A claimed it was entitled to—$363,741.75

without costs, "voluntarily" reduced to a mere $233,861.04, ECF 134-1, at 1—was so outrageous as to shock the conscience of this Court. And M&A's petition was worse than the one in *Landow* in at least one important respect: M&A had overbid and under-justified its fee petitions before. So this Court found that "[i]f there are motions for attorneys' fees and expenses that should be disallowed in their entirety simply because of the outrageously excessive amount requested"—and the inadequacy of the evidence for that outrageous amount—"the pending motion would fit the bill." *See Landow*, 999 F.2d at 95.

Nevertheless, like the district court in *Landow*, the Court hesitated to deny the petition outright. In *Landow*, the Fourth Circuit emphasized that it was denying the fee petition at issue for two reasons: the plaintiff's time records did not "specifically allocate the time spent on each claim" and the plaintiff had "fail[ed] to make a good faith effort to exclude fees attributable to unsuccessful claims." *Id.* at 97–98. Here, where the plaintiff did not advance any unsuccessful claims completely distinct from its successful claims, neither factor was present. As inadequate as M&A's time records were, they were not inadequate in that particular way. For that reason—and that reason alone—the Court declined to deny the fee petition wholesale. However, the Court requested that "should this matter be appealed and the appellate court find that this court had discretion to deny all legal fees here, the award of legal fees made herein should be rescinded without remand." *See id.* at 95.[2]

Ultimately, the Court granted the fee petition in part, awarding $21,703.26 in attorneys' fees and $9,336.18 in costs, for a total of $31,039.44. ECF 137 & 138.

---

[2] The defendants now ask the Court to follow *Landow* and reduce the fee award to zero. For the reasons described in the Court's prior opinion, the Court declines to do so. *See* ECF 137, at 38–40.

On April 26, 2024, M&A moved for reconsideration under Rule 59(e).[3] ECF 139. The defendants opposed the motion. ECF 142. M&A replied. ECF 145.

## II.     Standard of Review

Under Rule 59(e), a party may move for reconsideration of a final judgment within 28 days of its entry. Fed. R. Civ. P. 59(e); *Katyle v. Penn. Nat'l Gaming, Inc.*, 637 F.3d 462, 470 n.4 (4th Cir. 2011). "Reconsideration is an 'extraordinary remedy,' to be used 'sparingly,' available on only three grounds: 1) an intervening change in controlling law; 2) previously unavailable evidence; or 3) to correct a clear error of law or prevent manifest injustice." *JTH Tax, Inc. v. Aime*, 984 F.3d 284, 290 (4th Cir. 2021) (quoting *Pac. Ins. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998)).

## III.    Discussion

M&A moves for reconsideration of the fee award on four grounds. First, M&A argues that the Court legally erred by both reducing the number of compensable hours in each billing category and reducing the lodestar by 50 percent for M&A's flawed billing records. Second, M&A denies that it has overbilled before. Third, M&A claims that the Court's ruling will deter plaintiffs'

---

[3] M&A styles their motion a Rule 59(e) motion for reconsideration or, in the alternative, a Rule 60(b) motion for relief from the judgment. Pursuant to Rule 60(b), the Court also may "relieve a party . . . from a final judgment, order or proceeding" if the party shows that one of six grounds for reconsideration exists. Fed. R. Civ. P. 60(b). Because the motion was filed on April 26, 2024, within 28 days of the entry of the judgment on March 29, 2024, it is a Rule 59(e) motion. In any event, the motion does not satisfy either standard.

attorneys from bringing FLSA actions. Fourth and finally, M&A attempts to relitigate the Court's factual findings on a host of smaller issues. None of M&A's arguments warrants reconsideration.

### A. Lodestar Reductions

First, M&A argues that the Court legally erred by eliminating hours from each category as unreasonable and then imposing an across-the-board reduction for M&A's failure to exercise billing judgment. On M&A's account, the Court may "either engage in a targeted item-by-item reduction" or "engage in a global reduction," "but not both." ECF 139, at 5. "If a court has already found the reasonable number of hours expended through targeted eliminations, it has corrected for billing judgment," M&A claims, "and a further global reduction to remove unreasonable hours is redundant and an impermissible double discount." *Id.* at 6. Although the Court welcomes the opportunity to elaborate on its reasoning, the Court did not err.[4]

Start with the Supreme Court precedent M&A cites most: *Hensley v. Eckerhart*, 461 U.S. 424 (1983). Laying out what became known as the lodestar method, *Hensley* began by observing that "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Id.* at 433. Then the *Hensley* Court explained what a party must do to justify a fee request and how a district court should calculate a reasonable fee:

> The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed. Where the documentation of hours is inadequate, the district court may reduce the award accordingly. The district court also should exclude from this initial fee calculation hours that were not "reasonably expended." Cases may be overstaffed, and the skill and experience of lawyers vary widely. Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary.

---

[4] To the extent the clarification in this opinion appears to conflict with the reasoning of the prior opinion, the reasoning of this opinion controls.

*Id.* at 433–34 (citation omitted). *Hensley* thus identifies two independent bases for reducing the number of hours that count towards the lodestar fee. A district court "may reduce the award" because "the documentation of hours is inadequate." *Id.* at 433. And a district court "should exclude from this initial fee calculation" any hours that "were not reasonably expended." *Id.* These two bases for reducing the lodestar are independent. As the Supreme Court spelled out, "Where the documentation of hours is inadequate, the district court may reduce the award accordingly. The district court *also* should exclude from this initial fee calculation hours that were not reasonably expended." *Id.* (emphasis added). The district court "may," and perhaps even "should," account for both forms of "billing judgment"—billing only for substantiated hours and billing only for hours reasonably expended. *See id.* at 434.

This Court followed *Hensley*'s twofold directive. First, this Court "identified the reasonable number of hours expended in each category, reducing the award in each category where and to the extent that those hours were excessive," ECF 137, at 41; *see also id.* at 12–27—or on *Hensley*'s terms, "exclud[ing]" from the lodestar hours that "were not reasonably expended," *Hensley*, 461 U.S. at 434. Second, this Court found that M&A's fee petition was so pervasively inaccurate and unjustified "that the Court [could not] accept its submission at face value." ECF 137, at 28. Not only was M&A's documentation of its fees "implausible, inaccurate, and inappropriate," *id.* at 29, but M&A's attempts to justify its petition "undermine[d] its credibility" and "cast[] serious doubt on the accuracy of its entire filing," and M&A effectively "admit[ted] that [M&A] billed inaccurately and for non-compensable work because it could not be bothered to exercise billing judgment," *id.* at 30. Accordingly, the Court reduced the lodestar by 50 percent, *id.* at 27–31—or as *Hensley* puts it, "reduce[d] the award" because M&A's "documentation of

hours [was] inadequate," *Hensley*, 461 U.S. at 433. In so reasoning, this Court followed the map *Hensley* made.

M&A disagrees. According to M&A, *Hensley* bars the path the Court took. Under *Hensley*, M&A says, "district courts have the discretion to determine the reasonable number of hours expended through either the targeted elimination of hours, or a global reduction, but not both." ECF 145, at 1. M&A rests its reading on a single sentence: "The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success." *Hensley*, 461 U.S. at 436–37. But as those last six words reveal, M&A is quoting a completely different part of *Hensley* irrelevant to the issue M&A raises. The lodestar method has three steps: identifying the lodestar fee (the reasonable rate multiplied by the reasonable number of hours), deducting for hours devoted to unsuccessful claims independent of successful ones, and deducting for relative success. *See, e.g.*, *McAfee*, 738 F.3d at 88. M&A is challenging the Court's calculation of the first step. However, the passage M&A quotes from *Hensley* comes from its instructions for the third step. *See Hensley*, 461 U.S. at 434–37. That section begins: "The product of reasonable hours times a reasonable rate does not end the inquiry. There remain other considerations that may lead the district court to adjust the fee upward or downward, including the important factor of the 'results obtained.'" *Id.* at 434. The section continues by cautioning that if "a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount." *Id.* at 436. To address that problem—that is, to adjust for the degree of success the prevailing party obtained—the district court "may attempt to identify specific hours that should be eliminated, or it may simply reduce the award for the limited success." *Id.* at 436–

37. M&A's reading of *Hensley* rests on a misreading of this passage. It concerns the third step, not the first.

The Fourth Circuit's application of the lodestar method confirms that this Court did not err. Twice, the Fourth Circuit has affirmed district courts that combined categorical and across-the-board deductions, as this Court did. *See Jones v. Southpeak Interactive Corp.*, No. 3:12-CV-443, 2014 WL 2993443 (E.D. Va. July 2, 2014), *aff'd*, 777 F.3d 658 (4th Cir. 2015); *Alexander S. ex rel. Bowers v. Boyd*, 929 F. Supp. 925 (D.S.C. 1995), *aff'd sub nom.*, *Burnside v. Boyd*, 89 F.3d 827 (Table), 1996 WL 329529 (4th Cir. June 6, 1996).

In *Jones*, the plaintiff prevailed in an action under the Sarbanes-Oxley Act of 2002, entitling her to "reasonable attorney fees." *Jones*, 2014 WL 2993443, at *1 (quoting 18 U.S.C. § 1514A(c)(2)(C)). To calculate the fee award, the district court applied the same three-step lodestar analysis that governs FLSA actions like this one. *See id.* at *1–3 (citing, *e.g.*, *Hensley*, 461 U.S. at 437; *McAfee*, 738 F.3d at 88–95). The district court began by calculating the reasonable hourly rates for the attorneys at each of the firms that represented Jones. *Id.* at *3–8. Then the court calculated the reasonable hours. *Id.* at *8–14. First, the court assessed the number of hours claimed in each category of litigation work, deducting from each category where appropriate. *Id.* at *11–14. For instance, the court eliminated 4.8 hours logged for non-compensable clerical work. *Id.* at *11. Second, the court found that an unspecified number of billing entries were reconstructed after the fact, rather than recorded contemporaneously with the work billed. *Id.* at *12–13. "Therefore," the court imposed "a deduction of 10% across the board." *Id.* at *13. "That deduction," the court specified, "[would] be applied after the specific deductions required herein have been made." *Id.* The table summarizing the court's calculations confirmed that it pursued this course. For each of the two attorneys at issue, the court started with the number of hours the plaintiff requested,

deducted specific hours from each category, and then reduced the entire lodestar for that attorney by 10 percent. *Id.* at *14. On appeal, the Fourth Circuit affirmed the district court's award of attorneys' fees. *Jones*, 777 F.3d at 675–78. Although the Fourth Circuit did not expressly discuss this feature of the district court's decision, the panel expressly rejected the argument "that the district court failed to follow the three-step process outlined in *McAfee*." *Id*. *Jones* confirms that a court may make category-by-category deductions to eliminate claims for hours that were not reasonably expended, then deduct globally for an inadequately supported fee request.

*Boyd* also confirms that conclusion. In *Boyd*, the district court made category-by-category deductions and an across-the-board deduction to address the same type of issue: the need to eliminate hours that were not reasonably expended. The plaintiffs there were entitled to reasonable attorneys' fees because they prevailed in a civil rights action under 42 U.S.C. § 1988. *Boyd*, 929 F. Supp. at 928. The district court performed the first step of the lodestar analysis the way all courts must: first, "the court determine[d] a reasonable hourly rate and the number of hours reasonably expended by counsel, then multiplie[d] the rate by the hours in order to determine the lodestar figure." *Id.* at 932. In determining the number of hours reasonably expended, the district court first eliminated hours from certain litigation categories. For instance, the district court disallowed certain hours of trial attendance because "[i]n spite of the court's repeated entreaties to streamline Phase II of the trial, plaintiffs insisted on putting up testimony" that proved "redundant and unnecessary." *Id.* at 942. Then, because one firm needlessly overstaffed the case, the district court imposed "a ten-percent reduction in the overall [firm] fee submission, said percentage to be deducted after the deductions described in the preceding paragraphs." *Id.* at 943. On appeal, the Fourth Circuit evaluated whether the district court properly calculated the fee award. *Boyd*, 89 F.3d at *1. "Finding no error," the Fourth Circuit "affirm[ed] on the basis of the district court's

thorough opinion." *Id.* at *1–2. So a court may make category-by-category reductions to eliminate hours that were not reasonably expended, then make an across-the-board reduction for that same purpose, so long as the reductions address distinct sources of excess. *Boyd*, like *Jones*, shows the Fourth Circuit permits district courts to combine category-by-category reductions with across-the-board reductions.

No wonder, then, that district courts across this circuit have calculated fee awards in similar fashion. *See, e.g.*, *Gorrell v. Wake Cnty.*, No. 21-0129-M, 2022 WL 3222003, at *11–13 (E.D.N.C. Aug. 9, 2022) (reducing lodestar because plaintiffs billed attorney time for non-legal work and then imposing 15 percent across-the-board reduction for vague, block-billed, and otherwise flawed supporting documentation); *Sines v. Kessler*, No. 17-0072, 2020 WL 2736434, at *6 (W.D. Va. May 26, 2020) (holding a district court may reduce hours "by identifying and disallowing specific hours that are not adequately documented, by reducing the overall fee award by a fixed percentage or amount based on the trial court's familiarity with the case, its complexity, and the counsel involved, or by some reasoned combination of the two") (cleaned up); *Doe v. Alger*, No. 15-0035, 2018 WL 4655749, at *8–11 (W.D. Va. Sept. 29, 2018) (deducting 20 percent and 5 percent from each attorney's time for inadequate documentation, then eliminating specific hours, and then deducting 35 percent across the board for billing excessive and duplicative hours).

Unable to find Supreme Court or Fourth Circuit authority for its position, M&A turns to a single out-of-circuit case: *Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348 (11th Cir. 2008). In *Bivins*, the Eleventh Circuit reviewed a district court's award of attorneys' fees in a Section 1988 action. *Id.* at 1350. To determine the number of compensable hours to include in the lodestar, the district court first proceeded category-by-category, eliminating hours until it deemed the remaining number of hours in each category "reasonable." *Id.* at 1351. Second, the district court "applied a

further 35% across-the-board reduction" on the basis of several of the *Johnson* factors, including one the court had considered already in making its categorical deductions. *Id.* Finally, the district court concluded that the resulting figure was "reasonable." *Id.* In relevant part, the Eleventh Circuit held that the district court erred in "conduct[ing] both an hour-by-hour analysis and appl[ying] an across-the-board reduction of the requested compensable hours" because that "circuit's precedent state[d] that the district court is to apply either method, not both," in order to "ensure that the district court does not doubly-discount the requested hours." *Id.* at 1351–52.

*Bivins* does not warrant the reconsideration of the fee award in this case. First, *Bivins* is not the law in this circuit. M&A points to no Fourth Circuit decision adopting any rule like it, and it is not obvious that it can be reconciled with *Jones* and *Boyd*. Second, *Bivins* predicated its holding on Eleventh Circuit precedent, not on Supreme Court precedent or some other source of law applicable in this circuit, like a fee-shifting statute. *See id.* at 1351 (explaining that its holding follows from "[o]ur circuit's precedent"). Third, even if *Bivins* were the law, this case is different. The district court in *Bivins* reduced the fee award twice for the same defect: billing for an unreasonable number of hours in light of the work involved in the case. *Id.* By contrast, this Court's categorical and global deductions rested on distinct grounds: the category deductions were for M&A's unreasonably excessive hours billed, whereas the global deduction was for M&A's unreliable and inaccurate fee petition. Put another way, the district court in *Bivins* framed both its category-by-category cuts and its across-the-board cut in terms of the same prong of *Hensley*: "exclud[ing]" from the lodestar hours that "were not reasonably expended," *Hensley*, 461 U.S. at 434. And unlike the district court in *Boyd*, which combined the two types of cuts to address different billing excesses (like dilatory trial tactics and overstaffing), the district court in *Bivins* combined the two types of cuts to address one problem. By contrast, this Court addressed hours

not reasonably expended in its category-by-category cuts, then addressed hours inadequately documented—*Hensley*'s other prong—with its across-the-board cut. To the extent this Court's across-the-board cut could have been construed otherwise, this Court clarifies that it cut 50 percent because of the pervasive credibility problems with M&A's fee petition and its damning explanation of the petition's defects.

To be sure, this Court could have been more precise in its use of the phrase "billing judgment." As the Court acknowledged, the duty to exercise billing judgment encompasses a duty to excise excessive hours from the fee petition and a duty to provide accurate, adequate documentation of the number of hours expended. *See* ECF 137, at 27 (citing *Hensley*, 461 U.S. at 434; *Trimper v. City of Norfolk*, 58 F.3d 68, 74, 77 (4th Cir. 1995)). In characterizing the 50 percent global deduction as a "billing judgment" deduction, the Court may have left the door ajar to the misimpression that the Court was deducting again for M&A's unreasonably excessive work on the case. In fact, the Court was deducting because M&A's records were pervasively unreliable. While some examples illustrated both issues, the issues themselves were distinct.

The Court did not err in reducing M&A's fee award for both its excessive billing and its inadequate support for that billing.

### B.  Repeat Offender

Second, M&A challenges the Court's determination that the firm is a "repeat offender." In the previous opinion, the Court found that M&A had a track record of attempting to exploit the fee petition process, including by overbilling in many of the specific ways M&A overbilled in this case. As the Court recounted, M&A already has been denounced as a "repeat offender" and had a fee award reduced accordingly. *See Munoz*, 2023 WL 6389129, at *9. Because M&A continued to refuse to exercise billing judgment, the Court deducted 25 percent of the lodestar fee award.

Now, M&A challenges the Court's finding that the firm has repeatedly abused the fee petition process. M&A does not contest this Court's authority to reduce the fee award if M&A is a repeat offender. M&A disputes only whether the firm is, in fact, a repeat offender. M&A's argument is that because the firm sometimes bills reasonably, M&A cannot be condemned for billing unreasonably. According to M&A, the firm "routinely discounts its fees for settlement purposes." ECF 139, at 13. And "[s]ometimes the courts make little to no reductions to M&A's fees as requested." *Id.* at 14. So the firm is not a repeat offender.

M&A's argument is unsound. The Court has no doubt that M&A has filed fee petitions that courts have found reasonable. That does not change the fact that M&A also has filed fee petitions that other courts have found unreasonable. M&A does not deny that it has been criticized for overbilling by the courts cited in the previous opinion. M&A also does not deny that courts have condemned the firm for overbilling in many of the same ways the firm overbilled here. M&A does not even claim that those courts erred. So M&A does not really challenge the basis for this Court's finding that the firm is a repeat offender: that several courts rightly have denounced M&A for billing for non-compensable tasks, billing more than 24 hours of a single attorney's time in a single day, billing for duplicative timekeepers, and other abuses of the fee petition process. *See Munoz*, 2023 WL 6389129, at *9–10; *Brackett*, 2023 WL 5094872, at *7–8; *Carranza*, 2022 WL 4080310, at *3; *Molina*, 2021 WL 2805838, at *6; *Chaten*, 2020 WL 4726631, at *7, *7 n.9; ECF 127-13, at 2 (citing ECF 275-5, at 50 in *Carrera*, No. JKB-17-3066). The Court did not err by deducting 25 percent for repeat abuse of the fee petition process. The deduction stands.

## C.  Chilling Effect

Third, M&A argues that the Court's ruling will discourage attorneys from litigating meritorious FLSA cases. In support of that argument, M&A offers a declaration from Jessica P.

Weber, an attorney whose practice includes FLSA litigation. ECF 139-2. In relevant part, Weber reports that "it is [her] opinion" that "this award will have a chilling effect on the willingness of competent counsel to represent low-wage workers in wage-and-hour claims in this Court." *Id.* ¶ 10. On her account, "it typically costs significantly more than $230,000 in attorneys' fees to see a case through years of motions practice, discovery, and trial." *Id.* ¶ 9.

This Court has no intention of deterring the representation of low-wage workers in wage-and-hour cases in the District of Maryland or elsewhere. In fact, the Court concluded its prior opinion by highlighting that fee-shifting in cases like this one is designed "in the service of some of our legal system's highest ideals: empowering the wronged to vindicate their rights, compensating those who step forward to serve as private attorneys general, and compelling those who violate the law to make those they harm whole." ECF 137, at 46–47.

The Court's ruling on the fee petition in this case should not hinder those noble aims or deprive those who serve them of the compensation they deserve. What M&A's argument and the accompanying declaration miss is that the Court was not ruling or commenting on the typical value of the services provided in an abstract FLSA case. The fee award here was not a sweeping statement about how all plaintiffs' firms litigate all FLSA cases or how all plaintiffs' attorneys should be compensated. It was a narrow statement about how M&A litigated this case and how M&A should be compensated for its work in this case. M&A's fee petition in this case is unrepresentative of ordinary practice.

The Court awarded M&A a small percentage of the fee the firm sought because of M&A's distinctive mistakes and misconduct. M&A substantially overstaffed virtually every phase of this case, especially the trial. M&A billed for more hours attending trial than there were hours of trial to attend. M&A billed for nearly 24 hours of a single attorney's time in a single day. M&A billed

extensively for non-compensable work, including clerical work. M&A double billed. M&A overbilled in these ways even after being denounced by many courts for these very same practices. M&A's explanation for many of these mistakes compounded them: The firm admitted it could not be bothered to exercise billing judgment and attributed its mistakes to software glitches that could not possibly have caused them, casting a cloud over the accuracy of the entire petition. M&A might have received a larger award for its service to Mr. Guillen if the firm had made a serious, good-faith effort to keep time accurately, staff tasks appropriately, and submit a credible fee petition. M&A did not receive a larger award because it did not meet those reasonable requirements.

At the end of the day, M&A's argument that this ruling will chill plaintiffs' attorneys from bringing meritorious FLSA cases implies that other plaintiffs' attorneys abuse the fee petition process as M&A has. That implication is unwarranted. The Court thinks far too highly of the plaintiffs' bar to think M&A's conduct and fee petition in this case are reflective of how most FLSA cases are litigated.

What the Fourth Circuit said in *Landow* when it denied the plaintiff's fee petition outright holds true here. "[T]he clear intent of Congress was to provide only *reasonable* fees to prevailing parties." *Landow*, 999 F.2d at 98. This Court's decision on M&A's fee petition "further[ed] that purpose by encouraging attorneys at the outset to request only reasonable fees and to provide the necessary assistance to the district court for determining a reasonable fee." *Id.* Nothing more. Nothing less.

### D.  Miscellaneous

Finally, M&A attempts to relitigate at least 14 factual disputes it lost in the previous round. M&A says virtually nothing the firm did not say before in its briefing in support of its fee petition. M&A bore the burden of proof in establishing its entitlement to fees. It did not carry that burden

on these issues before, and it does not carry it now. Nothing M&A says is persuasive, let alone indicative of legal error, manifest injustice, or the sort of extraordinary circumstances warranting reconsideration.

M&A begins by challenging the Court's decision to deduct time from the Case Development category. ECF 139, at 19. In that section of the previous opinion, the Court found that while "[m]any of these entries reflect a reasonable amount of time spent on reasonable activities," in the Court's judgment, "under the circumstances of this straightforward FLSA case handled by attorneys with extensive experience in FLSA cases," M&A billed for more hours than were warranted to develop the case. ECF 137, at 12; *see also id.* at 14. As an example of unwarranted case development time, the Court discussed M&A's billing entries for drafting and revising an affidavit for a man identified as Jose Antonio, as well as associated work with that individual. *Id.* at 13. The Court's concern was that this was not time reasonably spent because "Guillen never filed any affidavit from Antonio. And no one by that name served as a witness in the case." *Id.* M&A responded that working with Jose Antonio was reasonable because he was knowledgeable about the defendants' pay practices. *Id.* The Court rejected that argument because "Guillen never disclosed Antonio to the defendants in his answers to their interrogatories or his supplemental answers." *Id.*

> Twice, Guillen purported to identify, under penalty of perjury, "any and all persons who have personal knowledge of the facts and allegations set forth in Plaintiff's Complaint." *See* ECF 127-5, at 3–8; ECF 127-6, at 3. Twice, he did not mention Jose Antonio. That leaves the Court with a dilemma. If, as Guillen twice attested under penalty of perjury, no such person belonged on the list of "any and all persons who have personal knowledge" of the case, then it was not reasonable for Guillen's counsel to devote so much time to developing him as a witness. If, as Guillen says now, Antonio had personal knowledge of the defendants' pay practices, then it was reasonable to bill for time working with him, but he should have been disclosed to the defendants. Unwilling to assume that the plaintiff committed perjury, the Court finds instead that it was unreasonable for the plaintiff's counsel to devote this time to working with Antonio.

*Id.*

Now, M&A contends that Guillen *did* disclose Jose Antonio to the defendants, by listing him in Guillen's interrogatories as "Jose." ECF 139, at 19 (citing ECF 127-5, at 7). There is just one problem: M&A said the opposite in the last round of briefing. *See* ECF 131, at 19 ("Defendants question whether the small amount of time spent on preparing the affidavit was reasonable because Mr. Antonio is not identified in Plaintiff's discovery responses . . . [but] [n]either side identified him in discovery."). M&A may not wantonly change its representations to this Court—with no explanation whatsoever for the discrepancy—to match its changing litigation needs. The Court's findings stand.

M&A continues by challenging the Court's categorical reductions to the Discovery category of the fee petition. The heart of the Court's analysis was simple: "it is the Court's assessment that a case of this simplicity did not demand over 90 hours of written discovery." ECF 137, at 14. M&A does not challenge that finding. That alone is reason enough for the Court's analysis to stand.

Next, M&A argues the Court should not have cut its deposition hours. Once again, M&A does not dispute the Court's actual rationale for the cuts: that M&A billed "significantly too many hours [of depositions] for this relatively simple case" involving just four witnesses. ECF 137, at 15. Instead, M&A ineffectually disputes the Court's characterization of the scheduling and contents of the deposition of Salvador Alvarenga. However, the Court's account of those events was accurate. On the Friday before a Tuesday deposition, Ms. Melehy changed the deponent to an individual M&A had never disclosed to the defendants and about whom the defendants knew nothing: Mr. Alvarenga. When the defendants asked to postpone the deposition so they could prepare, Ms. Melehy insisted that it proceed on schedule because Mr. Alvarenga had already taken

off work on Tuesday and it would be a hardship for him to reschedule. Ms. Melehy then made that same representation to the Court. In reliance on Ms. Melehy's representation, the Court declined to postpone the deposition. But then, at the deposition, Mr. Alvarenga's sworn testimony was that he had not taken off work until days after Ms. Melehy's representations to the defendants. Now—for the first time—Ms. Melehy attests that Alvarenga had told her on Thursday that he had already taken Tuesday off from work. So the best M&A can say in defense of its refusal to agree to the defendants' reasonable request to postpone this deposition is that its deponent lied under oath.

In any case, M&A misses the point. The Court detailed the Alvarenga deposition episode to make one point only: that "M&A's scheduling of the Alvarenga deposition reflects poor judgment in the firm's management of billable time." ECF 137, at 15. The Court made that point even clearer at the close of this part of its opinion. "The point of recounting this dispute over deposition scheduling is this," the Court reiterated. "When M&A realized that it would not be able to depose the originally scheduled deponent, the only reasonable use of everyone's time would have been to postpone the deposition." *Id.* at 17. Even now, M&A says nothing that would undermine this claim. The factual bases for the Court's Depositions category cuts were sound.

M&A continues by disputing the Court's cuts to the Trial Attendance category. The Court awarded M&A fees for 25 percent of the hours it billed for attending trial. The Court imposed this 75 percent reduction for three simple reasons: M&A billed for attending more hours of trial than had even taken place, M&A billed for the attendance at trial of over twice as many staff as was reasonable, and M&A did not manage its time in court reasonably. Even now, M&A does not attempt to argue that it staffed trial reasonably—so that basis for these cuts stands unchallenged. In defense of its time management in court, M&A simply insists that the Court must have found its work helpful. Of course, some of M&A's use of trial time was reasonable. But as the Court

27

observed in its prior opinion and substantiated with over a dozen citations to the trial transcript, M&A "pursued so many futile, irrelevant, and repetitive lines of questioning that the Court regularly had to beseech them to keep the proceedings moving." *Id.* at 20–21 (citations omitted). Finally, M&A says it billed for more hours of trial attendance than there were hours of trial to attend because

> counsel's trial time includes time spent before and after trial on billable work, including meeting with the Plaintiff to discuss the trial and witness testimony, meeting with witness Alvarenga, meeting with one another to discuss strategy, meeting (in the case of Christina Melehy and Suvita Melehy) with the Courtroom Deputy to discuss trial logistics and technology and answer questions about the exhibits and witnesses, reviewing exhibits, reviewing examination outlines, and revising and rehearsing the closing argument on the last day of trial (in the case of Omar Melehy).

ECF 139, at 21–22. Assume that is true. That would mean that M&A billed as "Trial Attendance" hours it spent on activities other than trial attendance. Billing inaccurately is no defense of billing too much. M&A counters that accurately itemizing and labelling these tasks would have been "impractical." *Id.* at 22. But if M&A can remember and account for this time accurately now—a year-and-a-half after trial—then M&A could have accounted for this time accurately then. Ultimately, M&A's defense of billing more hours of trial attendance than there were hours of trial to attend is that the firm engaged in "block billing": "the practice of grouping . . . several tasks together under a single entry, without specifying the amount of time spent on each particular task." *See Guidry v. Clare*, 442 F. Supp. 2d 282, 294 (E.D. Va. 2006). But block billing is impermissible—a violation of *Hensley*'s requirement that fee petitioners provide adequate documentation of their hours. *See, e.g., Jones*, 792 F.3d at 404 (finding arbitrator correctly determined that block billing was a "serious deficienc[y]" with a fee petition and properly reduced the fee accordingly); *Role Models Am., Inc. v. Brownlee*, 353 F.3d 962, 971–73 (D.C. Cir. 2004); *Welch v. Metro. Life Co.*, 480 F.3d 942, 948 (9th Cir. 2007).

M&A next challenges the Court's 25 percent deduction from the hours M&A claimed in the ADR/Settlement category. In its prior opinion, the Court found that "M&A consistently overstated its fees in its quarterly reports to the defendants" and that "M&A's nearly uniform overstatement of its fees in its quarterly reports appears to have contributed to the protraction of settlement talks and perhaps even to their failure." ECF 137, at 23. Tellingly, M&A does not deny that it systematically overstated its fees in the quarterly reports. Instead, M&A claims these overstatements were immaterial to the resolution of the case. However, after a careful review of the record, this Court found credible the defendants' claim that their "ability to resolve the case [by settlement] was also impacted by the Quarterly Statements prepared by Plaintiff's counsel" because those exaggerated statements "misled Defendants and gave them the false impression that more fees had been incurred." ECF 127, at 36–37. The Court has no reason to credit M&A's stale, unsupported claims to the contrary. And again, M&A bore the burden of proof.

M&A also takes issue with the Court's 25 percent deduction from the hours M&A claimed for calculating damages. In its prior opinion, the Court observed that its "firsthand experience presiding over this case persuade[d] it that M&A devoted too much time to this task and did not spend that time effectively." ECF 137, at 26. Most notably, M&A's damages calculations were so unhelpful that "the Court was forced to calculate damages itself." *Id.* According to M&A, "the Court's credibility determination should not bear on whether the time spent by M&A to calculate damages was reasonable." ECF 139, at 25. M&A further contends that the Court should not have reduced these hours on the basis of this credibility determination because the penalty for that credibility determination was baked into the later deduction for M&A's relative lack of success. However, M&A attacks a strawman. While the Court noted its finding that M&A's calculations were not credible, the Court reduced these hours for the related but distinct reason that M&A's

calculations evinced that the firm had spent too much time on this task with too little to show for it. ECF 137, at 26. That finding stands, so those cuts stand.

Next, M&A challenges the Court's 50 percent reduction to the hours M&A claimed for discovery disputes. M&A claimed fees associated with three discovery disputes: a dispute about the defendants' answer to Guillen's first interrogatories, a dispute before Judge Copperthite, and the dispute about the Alvarenga deposition. ECF 114, at 17–19. M&A also noted a dispute before Judge Hollander, but disavowed claiming fees for that dispute. *Id.* at 18. "After carefully reviewing the record," including Judge Copperthite's discovery order and Judge Hollander's discovery opinion, the Court determined that "most of these hours were created by unreasonable litigation decisions by M&A." *Id.* at 26. Now, M&A argues that because the Court considered Judge Hollander's opinion, M&A "is being penalized even though it had already exercised the required billing judgment for this category." ECF 139, at 25. Not so. The Court did not deduct any hours for the dispute before Judge Hollander. The Court considered Judge Hollander's opinion only because it shed important light on the course of the discovery disputes—including the prior proceedings before Judge Copperthite—that had occurred up to that point in the case. The Court noted its agreement with Judge Hollander only on the general proposition that M&A had failed to manage the disputes appropriately. M&A misconstrues the basis for the Court's reduction.

M&A protests that the Court's claim that the firm billed for "tasks as mundane as putting dates on a calendar," ECF 137, at 29, is "not supported by the record," ECF 139, at 25, because M&A withdrew the only fee request that concerned calendaring alone. M&A misses the forest for the trees. The full sentence M&A quotes reads, "M&A billed the defendants for clerical work in virtually every category, including for tasks as mundane as putting dates on a calendar." ECF 137, at 29. The Court's point—which M&A does not contest now—was that fees for non-compensable

clerical work appeared in virtually every part of its fee petition. The Court did not say, "tasks as mundane as putting dates on a calendar [alone]," but rather "tasks as mundane as putting dates on a calendar." M&A's decision to bill for calendaring was merely an example. As for that example: M&A concedes that it did request fees at least once solely for adding dates to a calendar. Sure, M&A withdrew that inappropriate request after the defendants' objections made that request untenable. But the onus should never have been on the defendants to catch inappropriate billing like this in the first place. And M&A concedes it billed for clerical work including calendaring two dozen times. Even if the Court had not considered calendaring in particular, the record amply supported the Court's finding that M&A billed for non-compensable clerical work despite multiple courts warning M&A to stop doing so.

On the subject of non-compensable clerical work, M&A reiterates its prior argument that it was entitled to recoup fees for making binders for trial. But M&A says nothing that would change the Court's analysis. M&A billed over $12,000 for over 60 hours of binder-making. M&A did that even though multiple courts in multiple jurisdictions had stricken fees for making binders from M&A's prior fee petitions. *See Munoz*, 2023 WL 6389129, at \*9; *Carranza*, 2022 WL 4080310, at \*3; *Molina*, 2021 WL 2805838, at \*6. The fact that some courts in some cases in some other jurisdictions may take a different view is irrelevant.

M&A also argues that it should not be penalized for its bid to bill for 23.7 hours of Ms. Melehy's time in a single day because the firm ultimately withdrew that request after the defendants exposed it. The Court appreciates that M&A had the good judgment to withdraw that request after the defendants' research left M&A with no choice. But M&A should never have made this representation in this first place. In the context of a fee petition riddled with egregious instances of overbilling like this one, this misrepresentation is evidence of M&A's unwillingness

to adequately review its own work for mistakes. M&A cannot be permitted to make the defendants and the Court fulfill M&A's duty to exercise billing judgment.

Next, M&A faults the Court for declining to consider two declarations the firm submitted in support of its requested hourly rates. However, the Court already explained why it did not consider these declarations: They were prepared in support of previous fee petitions in previous cases, not in support of this fee petition in this case. *See* ECF 137, at 5 n.2. In any event, these declarations would have made no difference. As the Court explained already, "even if the Court were to consider them, they would not change the Court's findings. Indeed, the *Carrera* Court considered these affidavits and did not find them a reason to deviate from the Guidelines rates." *Id.* (citing *Carrera*, 2021 WL 3856287, at *5). The declarations change nothing.

Last, M&A challenges the Court's decision to reduce the award of costs from $18,672.35 to $9,336.18 for M&A's failure to exercise billing judgment. M&A's sole argument for the reconsideration of this cut is that the Court should not have faulted M&A for claiming it sought to recover for parking at the Greenbelt Courthouse because M&A did not ultimately bill the defendants for that non-existent expense. This argument fails for two reasons.

First, the Court's explanation of why this mistake reflected poor billing judgment was sound. As the Court explained, Mr. Melehy declared under penalty of perjury that his firm "seeks the parking and mileage costs incurred by myself and Suvita Melehy to travel to the pre-trial conference and trial, and also for Paralegal Christina Melehy to travel to the trial." ECF 114-3, ¶ 43. The pre-trial conference and the trial took place at the United States Courthouse in Greenbelt, Maryland. Parking there is free. Previously, M&A had been admonished for making this same claim in this same paragraph of a nearly identical affidavit. On November 28, 2023, Judge Chuang rejected this claim as frivolous and directed M&A to identify and remove any such fees from their

bill of costs. *De Paredes*, 2023 WL 8235753, at *6. About a week later, M&A filed in this case its supplemental motion for attorneys' fees and costs without acknowledging or correcting the error Judge Chaung had just exposed. Because the Court could not find any discrete charges for parking at the courthouse in M&A's bill of costs, *see* ECF 115, at 5–6, the Court did not strike any particular entries for parking. However, the Court could not ignore that M&A's recycling of this inaccurate affidavit suggested the firm had not ensured the accuracy of its filings. M&A's failure to excise this known, blatant error evinced poor billing judgment.

Second, despite what M&A insinuates in briefing, the Court did not impose the reduction at issue solely because of the free parking affidavit. The Court imposed this reduction because "M&A's request for costs evince[d] a grave failure to exercise reasonable billing judgment—a failure that call[ed] into doubt the accuracy and reasonableness of the entire request." ECF 137, at 46. The Court identified a litany of inappropriate requests for costs that cast doubt on the petition, *id.* at 43–46, and underscored that M&A had been warned not to make two of these mistakes— billing for meals and claiming to pay for free parking at the Greenbelt courthouse—before, *id.* at 46 (citing *De Paredes*, 2023 WL 8235753, at *6). The Court's award of $9,336.18 in costs stands.

None of M&A's miscellaneous challenges to the Court's factual findings is persuasive, let alone compelling enough to warrant reconsideration.

## IV.    Conclusion

Guillen's motion for reconsideration, ECF 139, is denied. A separate order follows.

Date: August 20, 2024

_____
Deborah L. Boardman
United States District Judge